CORA M. WINTER V. JOHN PIPHER & COMPANY AND
JOHN PIPHER, Appellants.

96   17|
·96  540|
98  540|

96   17|
117  584|

96   17
120  360

**Partnership.** For convenience, P. carried on a business under the name of P. & Co. He had a contract with plaintiff's husband that the latter should act as manager of the business, that P. should control it and direct said manager, who should be compensated by receipt of one-half of the net profits, nothing being said about sharing losses. Said manager, without the knowledge of P. made a note to plaintiff, signing thereto the name of P. & Co., by himself as manager. Plaintiff knew that her husband was allowed to draw but a limited sum monthly. *Held*, there was no partnership *inter se*, that plaintiff cannot recover against P. without proof that she was ignorant of the provisions of said contract or proof that she was induced to believe by defendant's acts that a partnership existed.

*Appeal from Cass District Court.*—HON. WALTER I.
SMITH, Judge.

THURSDAY, OCTOBER 17, 1895.

Action on a promissory note. Trial by the court.
Judgment for the plaintiff. Defendants appeal.—
*Reversed.*

*J. C. Bryant* and *De Lano & Meredith* for appel-
lants.

*F. J. Macomber* and *Willard & Willard* for appel-
lee.

Rothrock, J.—The promissory note upon which
the action was brought is for one hundred and
eighty-two dollars, dated January 11, 1890, payable
at the bank of Griswold sixty days after date. It is
signed as follows: "John Pipher & Co., per S.
Winter, Mgr." It is alleged in the petition that John
Pipher & Co. is a partnership in the drug business at
the town of Griswold, in Cass county, and that John
Pipher and Winter are the individual members
of the firm. The defendants, John Pipher & Co. and
John Pipher, answered by denying that any partner-
ship at any time existed between John Pipher and
Winter, and denying that John Pipher is in any
manner liable upon said note, because he never exe-
cuted the same, and that Winter, who wrote the signa-
tures thereto, was not his partner, but a mere hired
employe, who had no authority to bind him by any
such an obligation. This is the issue which was tried
in the court below; the contention being, in behalf of
the plaintiff, that there was a partnership as alleged,

and, on behalf of the defendant, that there was no partnership. And it is proper to state here, that the district court was fully authorized by the evidence to find that, if there was a partnership as to third persons, the note being for money borrowed, which went into the business, Pipher would be liable on the note.

The main contention arises upon a written contract entered into by Pipher and Winter. This contract is quite lengthy, but, as we think the rights of the parties are mainly controlled by its provisions, it appears to be necessary to set it out in full. It is as follows: "This article of agreement, made and entered into this thirtieth day of November, 1887, between John Pipher. party of the first part, and W. Stanton Winter, party of the second part, witnesseth: That the party of the first part hereby agrees to deliver into the possession of the party of the second part his stock of drugs, etc., now contained in the building situated on lot No. 15, block 8, in the town of Griswold, Iowa, which the party of the second part, for the compensation hereafter named agrees to manage. The party of the first part agrees, after the inventory of the stock has been made, to order and pay for any goods that may be necessary to make a good full stock for the Griswold trade. He further agrees that the party of the second part shall have the use of all the second story, except that part occupied by Dr. J. B. Martin, in the building in which the said stock is contained. The party of the first part further agrees that the party of the second part shall receive for his services one-half of the net profits of the business, said profits to be determined as hereafter provided. The party of the second part hereby agrees to take said stock, and manage it in a faithful manner and to the best of his ability, for the compensation hereinbefore mentioned, to-wit, one-half of the net profits of the business. The net profits to be determined

as follows:   *First.*  An inventory of the stock on hand, and the goods to be ordered to complete the stock, shall be made upon the taking effect of this contract, and annually thereafter.  *Second.*  Enough shall be added to or taken from the cash sales, and collections for the year to make the stock equal in value with the last annual inventory.  *Third.*  All goods purchased shall be paid for.  *Fourth.*  John Pipher shall receive fifteen dollars per month rent for the store building.  *Fifth.* Clerk hire, insurance on stock, and all incidental expenses shall be paid.  *Sixth.*  The remainder after subtracting the sums of items, 3, 4, from item 2, shall constitute the net profit, and shall be equally divided between the parties.   If at any annual settlement the stock shall be greater in value than at the last annual settlement, the excess shall be charged to the party of the first part, and taken from his share of the net profits.    If the stock is less in value, the difference shall be charged to the party of the second part, and taken from his share of the net profits.   Neither party shall draw from the business more than thirty dollars of the profits during any one month.

The party of the first part shall at all times exercise a controlling interest in the business and the party of the second part shall at all times be subject to the control and under the directions of the party of the first part in all matters relating to the business. All bills for goods purchased, and all expenses connected with the business, shall be met with the proceeds of the cash sales and collections.   All back accounts unpaid at the annual settlement shall be carried over into the following year, and no division of such accounts shall be made until final settlement, when they shall be equally divided; and no account shall be taken of the book accounts, in determining the net profits at the annual settlements.   This agreement shall take effect on March 1st, 1888, and continue in

force five years from that date, unless sooner deter-
mined by law, or as hereinafter provided. Either party
may determine this contract by giving to the other
party ninety days' notice in writing, and at the expira-
tion of the notice an inventory shall be made and a
settlement had as at the usual annual settlement,
except that the book accounts shall be divided as here-
inbefore provided. At the expiration of this contract,
either by lapse of time or by act of either party, the
stock shall wholly belong to the party of the first part.
No change in this contract shall be binding unless
made in writing, and signed by both parties. John
Pipher. W. Stanton Winter."

A careful examination of the provisions of the
contract fails to show that if the business should result
in loss, instead of gain, Winter should be liable for
any part of the loss, as between himself and Pipher. In
other words, if at the conclusion of the joint venture
there should be a loss, and Pipher should pay it, there
is no stipulation by which he could recover of Winter
anything in the way of contribution to the loss. A
partnership is defined to be "a contract of two or more
competent persons to place their money, effects, labor,
and skill, or some or all of them, in lawful commerce
or business, and to divide the profit and bear the loss
in certain proportions." 3 Kent, Comm. 23. In 17
Am. & Eng. Enc. Law, 834, it is said, "Participation in
the profits and losses of a joint business or undertaking
affords the usual, and perhaps the most cogent, test
of the existence of an intention to form a partnership."
We need not cite the large number of cases which sus-
tain this proposition. It is true that there are
cases which hold that a community of interest
in profits is sufficient to constitute a partnership.

But this court is committed to the doctrine that
there must be a sharing of the losses. In *Ruddick v.
Otis*, 33 Iowa, 402, it was said that "No doctrine of the

law is better settled than that a mere participation in
the profits does not constitute a partnership in respect
to the concern or adventure from which the profits
arise." Story, Partn. sections 540-545. "In order to
constitute a partnership *inter se,* there must be a shar-
ing in the losses, as well as the profits." See, also,
*Price v. Alexander,* 2 G. Greene, 431; *Williams v. Sout-
ter,* 7 Iowa, 445; *Munson v. Sears,* 12 Iowa, 178; and
*Holbrook v. Oberne,* 56 Iowa, 324 (9 N. W. Rep. 291). In
the last-named case it was held that an employe who
was to receive a share of the profits as a part of his
compensations for conducting the business is not a
partner. The whole scope of this written contract
shows that Winter was a mere manager or employe,
and the signatures to the note indicate that he was no
more than a manager. The word "partner" or "part-
nership" is not to be found in the contract, and all of
its provisions contemplate payment or compensation
for services rendered, and the measure of his compen-
sation was to be one-half of the profits. It is expressly
provided that "the party of the first part further agrees
that the party of the second part shall receive for his
services one-half of the net profits of the business."
There was evidence introduced on the trial which
showed that the business was conducted in the name
of John Pipher & Co. so that there would be no con-
fusion in that business with other business enter-
prises carried on by Pipher. In the arguments
presented to this court a great many authori-
ties are cited by the respective counsel, and it is to
be conceded that the question as to whether a partner-
ship exists is sometimes exceedingly difficult to deter-
mine, and there is apparently much conflicting author-
ity upon the subject; but adhering to the rule, which
has long been established in this state, that there must
be community of loss, we are relieved from reviewing
or considering cases cited by counsel. And there is no

evidence in the case, as to the manner of conducting the business, which authorizes a finding that there was a partnership as between the parties.

II.   The plaintiff is a third party, and an important question to be determined is, should the defendants be held to be partners as to her?   The evidence shows that she is the wife of Winter, and that the note in suit was given without the knowledge of Pipher.   If the acts and conduct of Pipher and Winter were such as to mislead the plaintiff, and induce her to believe that a partnership existed, then Pipher might be liable.   But it was incumbent on the plaintiff to show that she acted in the belief that they were partners.   Pipher testified on this subject as follows: "Some time in September, 1889, I received notice to terminate the contract between us.   The notice was in writing, and there was a letter accompanying it, asking me to come over and talk the matter over.   I went over soon after and had a talk with him and with his wife.   I told the plaintiff that we had come up there to talk over the business, because I understood from Winter that she was dissatisfied because the thirty dollars per month was not enough for them to live upon.   She said it was not too much, of course, but that they could get along on it, only she wanted to go back to Ohio to visit, and Winter could not furnish her the money.   I said to her that Winter could go out and get fifty or sixty dollars per month, and they would have more money to spend, but I thought it best to receive less, and have something accumulating.   I told her I would sell him an interest in the business just as soon as he had something ahead, so that he could buy an interest, and that I did not want to run the business myself. She seemed to understand that they were to draw but thirty dollars per month, and made no claim that her husband was a partner in the business.   She expressed

no surprise when I spoke of their being entitled to only thirty dollars per month, and did not say that she had no previous knowledge of the terms of the contract. She did not claim that her husband had any interest in the business. The contract between us was in duplicate, and we each held one of the duplicates." There is no evidence in conflict with this. In *Brown v. Rains*, 53 Iowa, 81 (4 N. W. Rep. 867), it is said, "A person can be held as partner, where he is not a partner, only when his conduct has been such as to mislead creditors, and estop him from showing the truth." In the absence of some evidence that the plaintiff did not know the terms of the contract between the parties to the agreement, or was induced by the acts and conduct of Pipher to believe that there was a partnership in fact, there can be no recovery as against him. The judgment of the district court is *reversed*.