JOHNSON BROTHERS, Appellants, v. CARTER & COMPANY, AND J. E. CARTER AND W. E. BROWN.

Partnership: EVIDENCE OF: SUFFICIENCY. Where one supplies the money to conduct an enterprise for a fixed rate of interest and a share in the net profits, acquiesces in the use of a firm name, furnishes a bookkeeper to handle the funds to offset the labor of the other in overseeing the work, takes the other's note for one-half the cost of material on hand at the close of the business, and states to a third party that the bookkeeper in using the firm name has full authority to represent him, it may be inferred that a partnership relati n exists, and is sufficient to authorize submission to a jury of the question of his liability on a note in the firm name signed by the other.

Partnership: SHARING OF PROFITS AND LOSSES. The following principles in relation to partnership are established by the

decisions of this state: (1) An agreement only to share profits will not .constitute a partnership, though evidence of the existence of such relation; (2) The sharing of losses is essential to a partnership, though the undertaking to do so may be inferred from an agreement to divide profits, unless precluded by the terms thereof; (3) That payment for services or for the use of money or property to be used in the business may consist of a share of profits without making the loaner or employe a partner.

**Statements of Employe:    DENIAL OF PARTNERSHIP:    ESTOPPEL.**
3    Where plaintiff extended credit to a supposed firm, relying upon representations of an employe that one of defendants was a member of such firm, if there was in fact no partnership and the employe was not authorized to act for such defendant, he was not estopped to deny the partnership.

*Appeal from Buena Vista District Court.*—HON. W. B. QUARTON, Judge.

WEDNESDAY, MAY 13, 1903.

ACTION on a promissory note of $1,232.12, signed "Carter & Co., by J. E. Carter," dated February 7, 1900, and payable in sixty days. The petition alleges that the defendant Brown was a member of that firm, and as such liable on the note, and also on a guaranty. The defendant put these allegations in issue. After plaintiffs had introduced their evidence, the court directed a verdict for the defendant. Judgment was entered thereon, and the plaintiffs appeal.— *Reversed.*

*Tait & Jackson* and *F. H. Helsell* for appellants.

*F. F. Fayville* and *Carr, Hewitt, Parker & Wright* for appellee.

LADD, J.—It appears that McGee, Kahman & Co. had contracted with the Ft. Dodge & Omaha Railroad Company to grade its entire line of road, and that said firm had

entered into a subcontract with J. E. Carter to grade two miles of the line near Wall Lake. Carter had an uncompleted contract with the Chicago & Northwestern Railway Company, and, being in need of financial assistance, consulted the defendant Brown. They entered into an arrangement under which the grading was done. Were they partners? Carter testified that he exhibited to Brown his contract with McGee, Kahman & Co., and a profile of the road; informed him that he must have "some one to go with him to do the work, or who would furnish the money to carry him"; that there would be a good profit in the contract, and proposed to give Brown one-half the profits if he would furnish the money; that Brown offered to go in if he could send a man to take care of his part of the work and look after the books; that it was agreed that he should furnish such a man, whose time should offset that of Carter, who was to oversee the work; that Brown should furnish from three to five thousand dollars, and receive half the profits. The witness was unable to recall all that was said, but declared that they talked over twice "what he should have and what I should have, and what he should furnish and what I should furnish." He further testified: "In that connection Mr. Brown said something to the effect that I ought to have a man there to look after the books, and I said, if he would furnish that money and a man to keep my books, and to help me in my contract to carry it out, that he should have a one-half interest in the net profits. * * * The question came up about the manner of keeping my books, to this effect: It was stated by them to me that I was carrying on this railroad contract over on the Northwestern, and was having expenses in that, and I was carrying on the contract with the Ft. Dodge road, and would have to anyway, both at the same time, and there must be some way of distinguishing between the expenses on the Northwestern and the expenses on the Ft. Dodge road; that was talked, and the understanding was

that the way I would keep my books, so that the money
that came in from that contract on the Ft. Dodge road
would be kept under the name of Carter & Co., and then
I would keep the other under my own name in my books,
so they would not conflict.   Mr. Campbell, I think, sug-
gested a firm name.''  Brown furnished John Campbell,
who kept the books in the name of Carter & Co., and trans-
acted all the business, buying all supplies and handling all
the funds, while Carter had charge of the men doing the
work.   The men employed were boarded, and the price
cf board deducted from their wages.   The note sued on
was executed for supplies bought by Campbell, and by his
direction charged to Carter & Co.   Brown honored sight
drafts on his bank, signed by "Carter & Co.," received
notes so signed for moneys advanced, and, in writing, so
addressed some of his letters.   He advised Goodwin, a
banker at Wall Lake, over the telephone, that Campbell
had full authority "to do any business down there in
regard to the work going on;   *   *   *   that anything
Campbell did was with his full consent.''  Though the con-
versation was concerning an application of Campbell to
borrow money for Carter & Co., Goodwin testified: "We
were talking in a general way.   I asked if Mr. Campbell
had authority to transact business down there, and he said
'Yes.' ''  Upon the completion of the grading contract,
including three additional miles, Carter executed his note
to Brown for one-half of the cost of the horses, scrapers,
etc., bought during the season and remaining on hand.
This is substantially all the evidence bearing on the issue
as to whether Brown was a partner in the firm of Carter
& Co.   On the one hand, plaintiff contends that it was
sufficient to carry that question to the jury, while on the
other defendant insists that the evidence shows what the
agreement was, and that it was properly construed as not
creating the relationship of partners between Brown and
Carter.

It may be conceded that where an agreement is fully proven, and is not ambiguous in terms, the court should declare its meaning, and define the rights and obligations

1. PARTNERSHIP: evidence of; sufficiency.

of the parties created thereby. But we do not think this is such a case. While the firm name of Carter & Co. was apparently selected for convenience in bookkeeping, there is nothing to indicate that it was not to include both parties to the enterprise. Brown's employment of Campbell, at his own expense, to act as bookkeeper and to handle the funds of Carter & Co., as an offset to Carter's time, together with his assurance of Campbell's full authority to act for him, are circumstances tending to show that such was their intention. True, he advanced the money to execute the contract, but he was a banker, and under the arrangement was to receive for its use the highest legal rate of interest. In these circumstances, the stipulation for one-half the net profits of the enterprise is more consistent with the theory of a partnership than a mere loan. The use of the words "net profits" may well have been understood as profits after the payment of interest. Both parties appreciated that large expenditures would be necessary, and the reference to such profits cannot be held, as a matter of law, to exclude the inference of the obligation of each to bear his just proportion of the losses, if any should occur. The thought, doubtless, was that all expenses should be paid out prior to the division of gains. If the money advanced was merely loaned to Carter, how happened it to be handled exclusively by Brown's representative, all purchases made by him, and everything done in the name of Carter & Co.? Possibly inferences explanatory of this may be drawn from the evidence, but not necessarily so. The conclusion that

2. PARTNERSHIP: sharing of profits and losses.

there was a partnership seems quite as reasonable. Of course, the mere sharing of profits will not be construed as establishing the partnership relation. *Ruddick v. Otis*, 33 Iowa, 402.

But it is an important circumstance to be taken into consideration. The obligation to share losses is an essential element to its existence. *Winter v. Pipher*, 96 Iowa, 17. But enterprises are not usually undertaken with a view of loss, and the mere fact that provision therefor is not expressly made does not preclude the inference that each partner is to bear his portion of the burdens as well as reap his share of the benefits of the venture. "An agreement to share profits, nothing being said about losses, amounts *prima facie* to an agreement to share losses also, for it is but fair that the chance of gain and of loss should be taken by the same persons, and it is natural to suppose that it was their intention, if they have said nothing to the contrary; and accordingly it has been held that, unless an intention to the contrary can be shown, persons engaged in any business or venture, and sharing the profits to be derived from it, are partners as regards the business or adventure." 1 Lindley on Partnership (Ewell) 30. This principle was recognized in *Richards v. Grinnell*, 63 Iowa, 44, where the court, speaking through Rothrock, J., said: "It is not necessary, in order to constitute a partnership, that there be an express agreement that each party shall bear a share of any losses which may occur in the business. This may be inferred from other provisions of the contract, the nature of the business, and the relation of the parties to the business to be transacted."

In the decisions of this court denying the existence of a partnership because of there being no obligations to share the losses, the agreements have been such as to exclude any such inference. Thus, in *Porter v. Curtis*, 96 Iowa, 539; *Winter v. Pipher*, 96 Iowa, 17; *Holbrook v. Oberne*, 56 Iowa, 324; *Kraus v. Meyer*, 32 Iowa, 566; *McBride v. Ricketts*, 98 Iowa, 539, and *Reed v. Murphy*, 2 G. Greene, 574—the contracts were those of employment at a percentage of the profits, or this with salary added. There was no community of interest, save the contingent

share of the profits in payment of services rendered. *Ruddick v. Otis*, 33 Iowa, 402, involved merely an advance to a firm for the purchase of wool, with a stipulation that one-third of the profits realized should be paid for its use. In *Williams v. Soutter*, 7 Iowa, 435, Drem advanced money to the firm of Soutter & Way to be used in the business for one year, on condition that it be then returned with thirty per cent. interest, or, at his option, one-third of the profits after deducting expenses. In *Clark v. Barnes*, 72 Iowa, 563, Seig & Williams furnished Barnes & Co. money and stock to manufacture wagons, upon an agreement to repay, with one-half the profits. In the last two cases the nature of the contracts precluded the notion that the parties advancing money were to share the losses, and gave them no control or direct interest in the business. From these authorities may be deducted, as established in this state, the following principles: (1) That the agreement only to share profits will not constitute partnership, though evidence of existence of that relation. (2) The sharing of losses is essential in a partnership, though the undertaking to do so may be inferred from an agreement to divide profits, unless precluded by the terms thereof. (3) That payment for services, or for the use of money or property to be used in the business, may consist of a share of profits, without making of the loaner or employe a partner.

The absence of any participation in or control of the business is generally mentioned as indicating that a party is not a partner, and, of course, the converse must follow. Indeed, it will be found in most of the cases where the relationship is declared to exist *inter se*, the party held has enjoyed a direct, rather than merely a contingent, interest in the enterprise. The use of the term "partnership" is not essential, and the adoption of a firm name may be dispensed with. The facts of no two cases are exactly alike. The only crucial test seems to be the intention of the parties. If it appears to have been their purpose to

enter into the relation of partners, all subterfuges of
either, resorted to in order to evade liability for possible
losses, while securing certainty of the advantages to be
derived from the relation, must be disregarded.   Brown
was careful to guard his portion of the prospective profits.
From what he did in agreeing to a firm name, though
ostensibly for convenience in bookkeeping, in acquiescing
in its use in all matters connected with the enterprise, in
the division of the profits after exacting the highest legal
rate of interest for money supplied, in furnishing a man
to act in his behalf in transacting the business, as an offset
to the labor of Carter in overseeing the employes, in tak-
ing Carter's note for the cost of half instead of all the
materials bought and remaining on hand, and in admitting
that Campbell, in making use of the firm name "Carter &
Co.," had full authority to represent him, it might have
been inferred that he was not merely acting as a money
loaner but as a partner, and that both he and Carter so
understood in the selection of a firm name, and so intended
in carrying on their joint enterprise.

II.   Plaintiffs doubtless extended credit to Carter &
Co, in reliance on Brown being a member of the firm.   If
Brown was not in fact a member, Campbell must have

3. STATEMENTS been employed to assist Carter, and, if so,
of employe:
denial of     was not authorized to act for Brown in mak-
partnership:
estoppel.     ing purchases.   In such circumstances the
latter would not be bound by what Campbell said in buy-
ing goods of plaintiffs for Carter & Co., and as his repre-
sentations, and not Brown's conversation over the
telephone with Goodwin, induced plaintiff to extend credit
to that firm, Brown would not be estopped from denying
that he was a member thereof by having held himself out
as such member and having thereby misled them.   If,
then, Brown and Carter were not partners, the former is
not liable.   In other words, the facts of the case are such
that the issue of estoppel ought not to be submitted.

III.   It is unncessary to consider the issues raised
with respect to the guaranty signed by Brown to induce
plaintiffs to dismiss a suit previously begun on this same
indebtedness.    Objections now interposed to recovery
thereon may be obviated by other evidence introduced on
the next trial.  The rulings on the admissibility of evi-
dence were so manifestly correct as not to demand detailed
consideration.    For the error pointed out, the judgment is
REVERSED.