HARRISON v. CLARKE et ux.

(Circuit Court of Appeals, Eighth Circuit. September 21, 1908.)

No. 2,667.

1. APPEAL AND ERROR (§ 80*)—APPEALABLE DECREE—FINAL DECREE.
    A decree in equity which purports to settle finally and definitely the merits of the entire controversy between the parties is a final decree, from which an appeal lies, although the court retains jurisdiction in aid of its execution in accordance with the adjudicated rights of the parties.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 494–509; Dec. Dig. § 80.*]

2. PARTNERSHIP (§ 333*)—SUIT FOR SETTLEMENT—BREACH OF CONTRACT.
    Complainant and defendant entered into a contract of partnership for the purchase of lands along a lake shore as a site for a summer resort and to develop and sell the same. By the terms of the agreement complainant was to attend to the business of the partnership and defendant was to furnish the money required to pay for the lands and for the payment of taxes and necessary expenses, and from the proceeds of the land when sold he was to be repaid his advances, with interest, and complainant was to receive a sum equal to such interest for his services; the remainder to be equally divided. After complainant had purchased and paid for a portion of the lands, and expended other sums for expenses, taxes, and securing options on other lands, defendant without justification repudiated the contract and refused to make the advances required thereby, in consequence of which the enterprise came to an end. Held, in a suit to wind up the partnership and recover damages for breach of the contract, that complainant was not entitled to damages for loss of profits, which were too uncertain and speculative, nor beyond legal interest on the sums advanced by him; but, the contract having been broken by defendant, so that payment for his services could not be measured thereby, he was entitled to recover their reasonable value and to a personal judgment against defendant for so much thereof as was not realized from the proceeds of the property purchased, when sold, after paying the other demands chargeable thereon.
    [Ed. Note.—For other cases, see Partnership, Dec. Dig. § 333.*]

Appeal from the Circuit Court of the United States for the Northern District of Iowa.

T. W. Harrison (Frank Farrell, on the brief), for appellant.
William G. Clark, for appellees.

Before HOOK and ADAMS, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge. This is an appeal by Harrison from a decree in a suit brought by him against Clarke to wind up the affairs of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a partnership between them and for damages for a breach by the latter of the partnership contract. Clarke, the defendant, moves to dismiss the appeal because, as he says, the decree is interlocutory, not final. But the decree purports to settle finally and definitely the merits of the entire controversy and to leave nothing undone but to execute it. The retention of jurisdiction by the trial court was simply in aid of the details of execution according to the adjudicated rights of the parties. The motion must therefore be denied.

The partnership was first formed orally, and after the parties operated thereunder for several months, the terms of the contract were reduced to writing. The purpose was to engage in the purchase, development, and sale of lands along and within two miles of the west shore of the lake known as "Mille Lacs," in Minnesota. Harrison, the complainant, was to contract for and purchase the lands, both parties were to "use their best influences and endeavors to develop" them and "realize therefrom the most possible," and the complainant was to sell them. The defendant was to furnish the money for the purchase price, taxes, and all necessary actual expenses in making purchases and sales. He was to repay complainant, upon request, and the production of vouchers, the moneys expended by him for such purposes prior to the date their contract was reduced to writing, with interest at 6 per cent. Complainant's time in buying, selling, and handling the lands and the securities arising from the disposition of them was placed against the use of defendant's money. The partnership was to endure until all the lands were sold and the proceeds collected and distributed, unless sooner dissolved by mutual consent. The proceeds were to be divided and paid as follows: (1) To defendant, the amount advanced by him for the purchase of the lands, and for taxes and expenses; (2) to defendant, interest on his advancements at 6 per cent.; (3) to complainant, for his services, a sum equal to the interest paid defendant; (4) the balance equally between them. Probably because of confidence in the success of the enterprise no express provision was made regarding losses. The law would supply it. The lands within the scope of the contract comprised between 2,000 and 3,000 acres, with about five miles of continuous shore line. When the lands were acquired they were to be put upon the market as an attractive site for a summer resort. The evidence gives that meaning to the clause of the contract requiring both parties to "use their best influences and endeavors to develop said lands," etc. After complainant had expended over $5,000 in the purchase of part of the lands, the payment of taxes, and for expenses connected with such purchases and the securing of options and opportunities to purchase other lands, and had also personally obligated himself for several thousand dollars more, he asked defendant to repay the advancements according to the terms of their contract, and persisted in his requests without result for more than a year. The defendant, after repeated promises to pay, finally repudiated his obligation. He demanded that the partnership relation be converted into the ordinary one of debtor and creditor, and that the money he would pay be considered as a loan and secured by the lands purchased, the title to be placed in his name for that purpose. This

position was taken without justification in the terms of their contract or in the conduct of complainant. The enterprise came to an end when less than half the lands and but a small part of the shore line had been acquired.

The trial court found to be due complainant, including interest to a date near that of the decree, for taxes paid $657.20, for expenses in connection with lands actually purchased $1,819.48, and for purchase money paid $11,654.18; and to defendant $3,040.83. The last-mentioned sum was on account of a note for $2,500 discounted by complainant at a bank designated by defendant to raise funds for their venture, and finally taken up by the latter; the interest to the date above referred to being $540.83. Complainant's principal assignments of error are that the trial court denied him recovery for (1) damages to his financial credit by defendant's failure to repay his advancements; (2) profits that might have been made had the contract been fully carried out; and (3) the value of his services. No error was committed in respect of the first two of these. There is nothing in the case taking it out of the general rule that principal and interest thereon is the legal measure of damage for failure to pay money when due (Loudon v. Taxing District, 104 U. S. 771, 774, 26 L. Ed. 923); and the proof of anticipated profits was insufficient for their ascertainment with that reasonable certainty which the law requires—they were too remote and speculative. But we think the court erred in its treatment of complainant's claim for services.

By the letter of the contract the value of his services was fixed at a sum equal to the amount of interest at 6 per cent. per annum upon all sums advanced by defendant for the purchase of lands, and taxes and expenses in making purchases and sales; that is to say, complainant's services were placed against the use of defendant's money, but this was upon the assumption that defendant would remain faithful to the enterprise to the conclusion contemplated and perform his obligation to furnish all funds needed, including the prompt repayment of complainant's preliminary advancements. By the decree the complainant was awarded for his services a sum equal to the interest on the $2,500 paid by defendant and on the amount complainant himself paid for purchase money, excluding his payments for taxes and expenses. The sum so awarded him was placed at the foot of the items entitled to participation in the proceeds of the lands decreed to be sold, and therefore left to take the chance of their sufficiency. In other words, though defendant wrongfully put an end to the enterprise, his investment and interest thereon were given precedence over the services of complainant, who observed the contract; and defendant was allowed to profit by his default, which made it impossible justly to apply the stipulated measure of compensation to complainant for his services. This was upon the theory that there was no competent proof of the value of the services save that furnished by the contract itself. We think there was such proof. The complainant testified in considerable detail as to what he did under the contract, the trips he made, the lands he purchased, secured options upon, and opportunities to purchase, and the skill required and exercised in doing

so·to advantage. This, with his previous experience in that business, and his testimony that he knew the value of his services, qualified him to speak. He said his services were reasonably worth $12,000, and there was no testimony to the contrary. Though the estimate of value is not conclusive (Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028) it is not obviously excessive, and, having the basis we find in the record, it should be accepted, especially since defendant did not see fit to dispute it. Complainant should be awarded the sum mentioned, and it should displace the award made him on the basis of interest on money expended.

Again, the services rendered by complainant to carry out the contract were not confined to the lands actually purchased. Therefore to restrict his recovery, as was done, to the proceeds of lands actually purchased, would be to charge them with an expense not incurred on their account, but which became fruitless of value to the firm because of defendant's default. If the services had been performed, and the contract had been repudiated before any lands whatever were bought, it would seem clear the complainant would have been entitled to a personal judgment at law for his damages, an element of which might very properly have been the reasonable value of the services, and we perceive no reason for applying a different rule in equity in a case like this, where to a substantial degree the purpose of the contract was defeated and by the breach of defendant the measure of compensation contracted for is not justly applicable. The defendant, being in the wrong and wholly responsible for the necessity of resort to litigation, should pay the costs of the suit. If the proceeds of the lands decreed to be sold are insufficient to pay all of the demands upon them, the defendant should be held personally liable for such part of the deficit as is attributable to the costs and the award to complainant for his services. We think that in other respects the decree as entered by the trial court is right, and not subject to the criticisms made in the assignments of error.

The decree is reversed, and the cause is remanded, with direction to enter one as indicated in the foregoing opinion.

NOTE.—The following is the opinion of Reed, District Judge in the court below:

REED, District Judge. This suit is for an accounting and recovery of damages from defendant for his failure to perform an agreement in writing, dated April 14, 1903, to advance money to pay for certain lands alleged to have been purchased by complainant for himself and defendant pursuant to such agreement. The contract is as follows:

"This agreement, made and entered into this 14th day of April, 1903, by and between A. D. Clarke, of Algona, Iowa, party of the first part, and T. W. Harrison, of Topeka, Kansas, party of the second part, witnesseth: That all tracts, lots, and parcels of land along the west shore or within two miles of the west shore of the lake known as Mille Lacs, in the state of Minnesota, which said second party has already purchased, bought, and contracted for, and for all tracts, lots, and parcels of land along the west shore or within two miles of the west shore of said lake known as Mille Lacs, in the state of Minnesota, which said second party may hereafter purchase, buy, or contract for, the said first party shall furnish the money to pay the purchase price for all of said lands, and to pay all taxes and necessary actual expenses in making the purchase and sale of said lands, and interest at the rate of 6 per

cent. per annum on such sums as said second party has advanced or shall advance to make payments thereon from the time paid by said second party until the same is repaid to him by said first party, the same to be paid to said second party on request therefor, and the production of vouchers, contracts, or deeds showing such payment; and said second party shall do the buying and selling of said lands, and the contracts, deeds, titles, and securities for said land shall be held in the name of said second party, and both said first party and said second party shall use their best influence and endeavors to develop said lands and realize therefrom the most possible, and the time of said second party in buying, selling, and handling said land and the securities thereon shall be placed against the use of the money so furnished by said first party, and, when said lands are sold, from the money received and collected therefrom there shall be paid: First, to said first party the money so advanced by him for the purchase of said land and for all taxes paid thereon and for all necessary actual expenses paid in making the purchase and sale of said land; second, to said first party interest at the rate of 6 per cent. per annum on all money so advanced by him from the time it was so advanced until it is repaid to him; third, to said second party a sum equal in amount to that which shall be paid to said first party for and on account of interest aforesaid; fourth, the balance of the proceeds arising from the sale of said lands shall be divided equally between said first party and said second party, share and share alike. This contract shall remain in force until all the lands so purchased and held in pursuance thereof shall have been sold, and the proceeds therefrom collected and distributed as herein provided, unless the same is sooner dissolved by mutual consent of the parties hereto, and a mutual division of the land, proceeds, and securities held thereunder.

"In witness whereof, the said parties have hereunto set their hands and affixed their seals the day and date first above written herein."

The defendant A. D. Clarke admits in his answer that he signed the contract, but alleges that, through the fraud of complainant in drawing the same, it does not correctly express the actual agreement between him and the complainant, which was that defendant would loan complainant the money necessary to purchase said lands, the titles to the lands to be taken in the name of the defendant as security for said loan; that the lands described in the bill of complaint, except one tract, were contracted for by complainant prior to the date of the contract, and that defendant paid $2,500 thereon before he discovered such fraud, and refused to pay any further sum, unless the contract was corrected to conform to the actual agreement; and by a cross-bill prays that the writing be reformed so as to correctly express such agreement. The validity of the contract is not otherwise challenged by the pleadings and other issues need not be stated. The pleadings are voluminous, and a large amount of testimony has been taken. It would serve no useful purpose to review the testimony at length, and it must suffice to state the conclusions which have been reached from a careful consideration of the whole thereof. Such conclusions are:

(1) That the evidence is not sufficient to warrant a reformation of the contract as prayed by the defendant.

(2) That the complainant is not entitled to recover for his time and services in making the purchase of the lands actually bought or contracted for by him, other than as provided in said contract.

(3) That complainant is entitled to recover the actual and necessary expenses incurred by him in purchasing said lands, and the amounts advanced to pay taxes upon, and the purchase price of the lands, with 6 per cent. interest upon said sums from the date of their payment by him. Said amounts to be repaid to or recovered by him as hereinafter ordered.

(4) Conceding that damages for injury to credit may in some instances be recovered, the evidence in this case is wholly insufficient to warrant a recovery by complainant of any damages for the alleged injury to his credit or financial standing because of the nonpayment of his personal obligations as they matured.

(5) Conceding, also, that anticipated profits to be realized from the completion of a contract may in proper cases be recovered as damages upon a breach of the contract by one of the parties thereto, the evidence in this case is not

sufficient to warrant a recovery by complainant of any sum as profits that he claims would have been realized if more lands had been bought; nor is there any competent evidence to show that there would have been any such profits, nor that sales of the lands actually purchased would have been effected at a profit if more lands had been purchased, nor that sales of lands purchased were retarded or prevented because of defendant's failure to furnish additional money to pay for lands actually bought, or for other lands that, might have been bought.

(6) It appears that complainant had purchased lands at Gull Lake, Minn., which is near Lake Mille Lacs, at or about the time of the purchase of the Lake Mille Lacs land. It does not appear what portion of his expense of trips to Minnesota were in connection with the purchase or handling of the Gull Lake lands. For such portion of the expenses complainant is not entitled to recover; nor is he entitled to recover for the following items, included in the statement of his account: Protest of $8,500 draft, $2, because said draft was not authorized by defendant. Expense of trip to New York, $90.11, because said trip was not authorized by defendant. Expense of trip to Ft. Dodge, in June, 1905, $27.60; expense of trip to Ft. Dodge, in November, 1905, $27.60; expense of trip to Ft. Dodge, in June, 1906, $35—the last three items obviously being the expenses of complainant in attending to this suit in this court. Expense of trip to Algona, January, 1903, $26; expense of trip to Des Moines, January, 1905, $20; miscellaneous expenses charged April 1, 1906, $200—because it does not appear that all or any of said expenses were incurred only in the purchase or care of the lands in question. There are some other items for which it is not clear that complainant is entitled to recover.

(7) That the lands actually purchased or contracted for by complainant and described in the bill of complaint, to which he holds the proper evidence of title, be sold at public sale, subject to the prior liens upon said lands other than taxes then due and payable, by a special master to be appointed by the court, and that the proceeds arising from such sale be deposited with the clerk of this court to be applied in payment: (1) Of the taxes due and payable upon said lands at the time of such sale. (2) To complainant the amount of taxes paid by him upon said lands, with interest thereon from the time of such payment at 6 per cent. per annum. (3) To complainant for the actual and necessary expenses incurred by him in purchasing or contracting for said lands only, and caring for the same, with 6 per cent. interest upon the amount of such expenditures from the time they were made. The three items above named to be first paid from said proceeds. (4) To defendant the $2,500 advanced by him to complainant July 20, 1903. (5) To complainant the amounts advanced by him upon the purchase price of said lands actually bought or contracted for by him, and to which he holds the proper evidence of title. Items 4 and 5 to be paid without priority to either, after items 1 to 3, inclusive, are paid. (6) To complainant interest upon the amounts so advanced by him upon said purchase price of lands at 6 per cent. per annum from the time of such advancements. (7) To defendant interest upon said $2,500 from July 20, 1903, at 6 per cent. per annum. Items 6 and 7 to be paid after items 1 to 5, inclusive, are paid. (8) To complainant an amount equal to the interest so paid to defendant and complainant under items 6 and 7 hereof, if said items are paid in full. (9) If there shall be any sum remaining of said proceeds after paying items 1 to 7, inclusive, in full, and item 8, it shall be divided equally between complainant and defendant. (10) If the proceeds of said sales shall not be sufficient to pay in full items 4 and 5, after paying items 1 to 3, inclusive, then the loss shall be borne equally by complainant and defendant, and judgment or decrees may be entered to effect such equal loss. (11) If such proceeds shall be sufficient to pay in full items 1 to 5, inclusive, but not items 6 and 7 in full, then the surplus, after paying items 1 to 5, inclusive, shall be applied first to pay the interest to complainant under item 6, and the remainder, if any, to pay the interest to defendant under item 7, and nothing shall be paid to complainant under item 8; but, if such proceeds shall be insufficient to pay in full the interest to complainant under item 6, then complainant may have judgment for such deficiency against defendant Clarke.

(8) The parties may agree upon a special master to make the sale, or, in the absence of such agreement, the court will appoint one.

(9) A large part of complainant's testimony bears upon his claim for alleged profits, for the alleged injury to his credit, and for services in buying the lands, for none of which he is entitled to recover. The complainant and defendant will each pay the cost and expenses of taking the testimony in his own behalf, and one-half of all other costs, including the costs, fees, and expenses of the special master in selling the lands.

(10) Jurisdiction of the suit is retained for the purpose of making any further orders necessary to carry into effect the decree herein ordered and to determine the amounts actually paid by complainant for lands purchased or contracted for by him to which he [holds] the title and the actual and necessary expenses incurred by him in purchasing or caring for said lands only, and any other order necessary or proper to be made to effect a final adjustment and settlement of this controversy between complainant and defendant.

A decree may be prepared accordingly, in which an exception may be saved to each party.

## Supplemental Opinion.

The complainant has filed an application for a modification of the decree as ordered in the memorandum opinion of January 28, 1907, which is in effect a petition for rehearing. The bill of complaint is framed upon the theory that the contract between complainant and defendant is one of partnership, and the prayer is for a dissolution of such partnership, and for an accounting, and complainant's contention is that he is entitled to judgment against defendant Clarke for the full amount advanced by him upon the purchase of lands, including his expenses and taxes paid, with 8 per cent. interest thereon, and that defendant's interest in the lands should be only in the proportion of $2,500 (the amount advanced by defendant) to $12,000, which complainant says is the value of his services, in purchasing the lands, and is his [contribution] to the capital of the alleged copartnership; that the proceeds arising from the sale of the lands should be applied, first, to pay complainant $9,500, as the alleged excess of capital contributed by him over the $2,500 contributed by Clarke; second, to pay defendant the $2,500 contributed by him with 6 per cent. interest thereon; third, to pay complainant an amount equal to any interest so paid to defendant; fourth, that the remainder of said proceeds should be divided equally between complainant and defendant; and that from the remainder of the proceeds so allotted to defendant should be paid (1) all taxes due upon the land at the time of the sale thereof by the special master, and the costs of this suit, including the costs and fees of the special master; (2) to complainant the amount advanced by him for the purchase of the lands including expenses, and taxes paid by him, and interest, which he claims amounts to $11,669.33; and that he have execution over against defendant Clarke for any deficiency remaining unpaid of said amounts after so applying the proceeds to be allotted to defendant Clarke. (See ninth paragraph of the decree proposed by complainant.)

This contention is based upon the theory that as Clarke was to advance the purchase price of the lands, including taxes and expenses, and did not do so, except to the amount of $2,500, the complainant is entitled to recover these amounts because of the breach of the contract by defendant. But, if Clarke is compelled to pay complainant the full amount of the purchase price of the lands and all taxes and expenses and interest thereon, it cannot be that complainant is further entitled to recover $12,000, or any other sum, as the alleged value of his services in making the purchases, and to have his interest in the lands decreed to be in the [proportion] of $12,000, the alleged value of his services, to $2,500, the amount advanced by defendant, or nearly five-sixths of the value of the lands. The mere statement of the complainant's contention shows that it is wholly untenable. If, under any circumstances, it could be held that complainant was entitled to recover anything for his services, other than as provided in the contract, the evidence is wholly insufficient to enable the court to fix the value thereof. It is true that complainant testified that his services in purchasing said lands were worth $12,000, and that defendant has offered no testimony in opposition thereto; but the mere fact that complainant has so testified is not of itself sufficient to enable him to recover that amount. He does not state the time required or spent by him in

164 F.—35

making such purchases, the value of such time, nor in what respect the title to the property was so intricate or complicated as to call for extraordinary skill or service in purchasing the lands.

The twenty-fifth interrogatory to complainant and his answer thereto, which was taken upon commission, are as follows: "Question 25. State what your services were worth in purchasing the said ' land, and perfecting the titles thereto, and caring for and protecting· the same, and in your efforts to purchase the additional lands within two miles of the west. side of said Lake Mille Lacs.. State, if you know, and, if so, how much said services are worth. Answer. I do know how much said services are worth. It required a peculiar and particular service, tact, and skill to hunt up the owners and buy the lands at a reasonable price, as the least excitement in regard to development would send the prices up to $100. an acre; for on some portions of the shore on said Lake Mille Lacs lands have been sold at $100 an acre, and the owners of the land around that lake are expecting to get $100 an acre and more for their land, and more, whenever development is started there. There was a vast volume of correspondence in connection with said lands, and some of the titles were complicated, and required particular knowledge of real estate law to get them perfected, and in order to purchase said land and get good titles thereto it required knowledge and experience and skill of both real estate business and real estate law, and my services were worth $12,000, no part of which has ever been·paid by said A. D. Clarke or any person for him." This is the entire testimony as to the nature and value of the complainant's services, for which he claims $12,000. The contract is dated April 14, 1903, and from the statement of complainant's expenses in the bill of complaint it appears that he made five trips from Topeka, Kan., to Minnesota in 1902 and 1903, and two in 1904, in connection with these Lake Mille Lacs lands, assuming that all of these trips were in connection therewith. But the time actually spent or required for all or any of these trips is not shown. The greater part of the land·was bought or contracted for before the date of the contract, April 14, 1903. Beginning with complainant's letters to Clarke, December 31, 1902, and continuing to April 25, 1903, he complains of being sick and confined to his room a good deal of the time, and unable to do any business, and, when not so confined, of being so pressed with other important matters that he had but little time to attend to the Mille Lacs land. Being thus unable to attend to these matters, and in view of the entire absence of testimony showing the time actually spent by him in purchasing and caring for these lands,ᵒ it is plain that he is not entitled to recover $12,000 as the value of his services in purchasing and caring for these lands.

Not only this, the question calls for the value ·of his services in the effort to purchase other lands, as well as in the purchases actually made. The answer includes the· value of such services, and there is no separation of the value of the services for each. The complainant under the contract is to be reimbursed only for the value of his services in the purchase of lands actually bought, and not for the value of efforts to buy other lands. There is not, therefore, any competent evidence in the record upon which to base an estimate of the value of complainant's services in purchasing the ·lands, even if he was entitled to recover therefor. But under the contract the complainant is not entitled to recover for such services. He drew the contract himself, and his understanding of what he intended by its terms appears from his ₁etter to Clarke of March 9, 1903. In this letter he says: "You said you would like to go in with me on all that land on that lake on the plan that we talked over last fall; that is, you furnish the money to buy the land and pay the taxes and all actual cash expenses, I to do the buying and selling and looking for the lands, then out of the first money received you to have your money back and 6 per cent. interest per annum thereon for the time it was used, then I to have for my services the same amount you receive in interest, and then the balance received to be divided equally between us as profits. That puts my work and skill and services against the use of your money, only it gives you ·the advantage of first getting your money back and 6 per cent. interest thereon, before I get anything for my work and services; that is, I take the second chance of getting anything for my work and services, and then we equally take the third chance on a division of the profits. But I am

so well satisfied that it will be a paying investment that I am willing to take that second chance; for I believe that with any sort of development that land will bring $100 an acre, and if you should build a trolley line out there it would bring from $100 to $500 an acre. The contract is drawn accordingly. The conclusion, therefore, is unavoidable that the complainant was to put his time in buying and caring for these lands against the use of the money to be advanced by defendant for its purchase; that defendant was to be first repaid the amounts so advanced by him from the proceeds of the lands when sold, and then 6 per cent. interest thereon, before complainant was to receive anything for his services; and that the value of such services was to be measured by the amount of the interest so to be received by defendant. In other words, complainant was to take, as he says, the second chance of receiving anything out of the profits of the adventure for his services after the amount of the investments was repaid to the defendant.

It is said, however, that this was to be done only in the event that defendant complied with his part of the contract. But the defendant only agreed to pay the cost of the lands upon request of complainant and the production of receipts or vouchers showing the amount paid and expended by him in so doing. If said amounts had been advanced by defendant, it is unquestioned that the same, with interest, would have to be repaid to him from the proceeds of the land, when sold, before complainant would be entitled to receive anything for his services or otherwise. Complainant having paid the same, the repayment of said amounts to him, instead of to the defendant, would leave the net result upon the profits or loss of the venture unaffected. The true measure, then, of complainant's damage for defendant's failure to pay the purchase price of the lands is the legal or agreed rate of interest. So confident was complainant that there would be a profit upon the venture that nothing is said in his letter to Clarke, nor in the contract, of there being a loss, instead of a profit. If the contract is one of partnership, as complainant contends, then the partners are each liable for their proportionate share of the losses of the venture, though it is not so specified in the agreement. This was so conceded upon the argument at the bar. The agreement to share profits implies an agreement to share the losses, unless a contrary intent appears. Johnson Bros. v. Carter, 120 Iowa, 355, 94 N. W. 850; Miller v. Hughes, 1 A. K. Marsh. (Ky.) 181, 10 Am. Dec. 719; Meriden Bank v. Galluadet, 120 N. Y. 298, 24 N. E. 994; Fleming v. Lay, 109 Fed. 952–955, 48 C. C. A. 748; Pirtle v. Penn, 3 Dana (Ky.) 247, 28 Am. Dec. 70. The rights of third parties are not involved, and, whether the contract is one of partnership or not, its fair import is that the parties thereto are to receive the benefits of any profits and bear the burden of any losses that may result from their venture.

Item 11 of the seventh paragraph of the memorandum opinion provides that complainant shall recover of defendant Clarke any deficiency remaining of the interest awarded to complainant under item 6, after applying the proceeds as there directed. Under the contract defendant was to advance, upon request of complainant, the amount of the cost of the lands, and, if he had done so, defendant would have been the loser of the interest upon the investment, if the lands, when sold, did not sell for enough to pay all of such interest, and complainant would lose his time. The complainant has paid for the lands, except $2,500 advanced by defendant, and unless he recovers interest upon the amount so advanced by him he will lose, not only his time, but the interest, which would have been defendant's loss if defendant had complied with his part of the contract. The complainant, therefore, is entitled to recover from defendant any deficiency of the interest upon the amount advanced by him that he does not receive from the proceeds of the land.

The claim of complainant to interest at the rate of 8 per cent. is based upon an alleged agreement in writing of defendant to pay interest at that rate. The legal rate of interest in Iowa and Minnesota is 6 per cent. per annum, but a greater rate may be contracted for in writing in Iowa, not to exceed 8 per cent. per annum. Code Iowa 1897, § 3038. The alleged written agreement relied upon by complainant is in the letters of defendant, dated June 16, June 22. and September 2, 1904. These letters are in answer to those of complainant, dated June 15, June 20, and August 31, 1904, urging payment by Clarke of the amounts advanced for the lands. The letters of defendant show a willingness

to pay interest at 8 per cent. if complainant would extend the time of payment. The letters of complainant do not show an assent to this proposition. On the contrary, they more persistently urge payment by defendant, and threaten to draw upon him if he does not comply with complainant's demands, and finally complainant did make the draft for $8,500. An agreement, to be binding, must be the mutual agreement of both parties. These letters do not show such an agreement, and complainant is therefore entitled to only 6 per cent. interest upon his advancements.

The complainant contends that the items of expenses claimed by him for trips and expenses (referred to in paragraph 6 of the memorandum opinion) were all incurred in connection with the purchase of these lands, and that none of them relate to the Gull Lake lands. The defendant does not dispute this, and complainant will therefore be allowed for his expenses as claimed, except those items which are disallowed by the sixth paragraph of the memorandum opinion.

Other matters referred to in the application for a modification of the opinion need not be considered. The application is denied.