J. Elwood Butz, Appellee, v. Hahn Paint & Varnish Co. et al., Appellants.

No. 43141.

November 12, 1935.

Rehearing Denied February 21, 1936.

Lane & Waterman, for appellants.

Harold E. Wilson and Frank F. Drake, for appellee.

MITCHELL, J.—J. Elwood Butz commenced this proceeding under the Workmen's Compensation Act (Code 1931, Section 1361 et seq., as amended), against the Hahn Paint & Varnish Company, C. A. Hahn, sole owner, C. A. Hahn, and Builders & Manufacturers Mutual Casualty Company of Chicago, to recover for an alleged partial loss of vision. The defendants denied that appellee was a workman or employee within the meaning of the statute and further denied the alleged injury and disability. The deputy industrial commissioner, sitting as sole arbiter, made the finding that on June 12, 1933, J. Elwood Butz, the claimant, suffered an injury arising out of and in the course of his employment, and that by reason thereof his vision was permanently impaired 12½ per cent, and awarded compensation for a period of fifty weeks at the rate of $15 per week, together with statutory medical, surgical, and hospital benefits, and costs. Hahn and the insurance company filed a petition for review before the industrial commissioner of the state of Iowa, who, upon a hearing, affirmed the award of the deputy commissioner. It was then appealed to the district court of Muscatine county, which affirmed the finding and award of compensation and entered judgment in favor of the claimant. Hahn and the insurance company have appealed to this court.

It was stipulated and agreed that, while claimant and one R. F. Bird were repairing a mechanical refrigerator in Muscatine on June 12, 1933, an accident occurred whereby the sulphur dioxide refrigerant was thrown into the face and eyes of claimant.

I. The first question presented is that there was not sufficient competent evidence in the record to warrant the finding

that Butz was an employee of the Hahn Paint & Varnish Company or an employee of C. A. Hahn. It is the contention of the appellants that C. A. Hahn and the claimant were in the relationship of copartners, rather than in the status of employer and employee.

We must turn to the record to ascertain the facts. C. A. Hahn resided at Muscatine, Iowa, where throughout the time involved herein he was engaged in selling paint, varnishes, wall paper, and kindred products, doing business under the tradename of Hahn Paint & Varnish Company, of which he was the sole owner. He had been acquainted for some years with J. Elwood Butz. Along in March of 1929 Hahn met Butz on the street and informed him that he had an opportunity to take over the Kelvinator refrigerator agency in and for the Muscatine territory. Hahn had had no previous experience in the mechanical end of the refrigerator business and was not familiar with such machines; Butz was a skilled mechanic and had had experience in this line of business. It was orally agreed between them that Hahn would furnish the capital and place of business, and Butz would contribute his skill and services; all profits from the enterprise to be divided equally between them. The subject of losses was not discussed. Business headquarters were established at the store occupied by Hahn Paint & Varnish Company. Hahn paid the rent for the premises; he furnished the funds or credit required for the purchase of machines and parts thereof; he handled the financial aspects of the business. All contracts were executed by Clarence A. Hahn, sole owner. All funds derived from the business were turned over to him, and he deposited the same in his own name in a bank account. Butz worked at any time of day or night that the exigencies of the business required. Service calls as they were made were entered in a call book, and, except in emergencies, were taken care of in the order in which received.

A partnership necessarily has its foundation in contract, express or implied, and of course the contractual relation can only arise from the mutual assent of the parties.

A concise statement of the rule is found in 20 R. C. L. at page 831, where it is said:

"The particular test as to the existence of the partnership relation which is most widely accepted today and which is ap-

plicable especially as between the parties themselves irrespective of the rights of third persons is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual consent of the members. This intent may be manifested by the terms of their agreement, the conduct of the parties to each other under it, or by the circumstances generally surrounding the transaction.''

In the case at bar the original agreement was wholly oral. The question here is, ''What was the real intention of these parties?'' The only things really agreed upon were that Butz was to handle the installation and servicing of refrigerators, and in return therefor he was to receive a share of the profits. Hahn was to finance the whole enterprise.

In DeLong v. Whitlock, 204 Iowa 701, at page 704, 215 N. W. 954, 955, this court said:

''There is no proof of a partnership agreement or of the terms of such an agreement. The record is barren as to the essential legal incidents to establish a partnership, such as contributions or the sharing of profits and losses. There is no evidence of partnership meetings, and the sole source of plaintiff's information 'as to there being a partnership' came from his father, and the plaintiff so testifies. The alleged partnership had no bank account, and it is not shown that any deposits were made in the name of a partnership. The DeLongs were the only persons who checked on the bank account, and all accounts were in the names of plaintiff C. W. De-Long or defendant W. A. DeLong. It is a matter of speculation what the name of the partnership was. These incidents are significant in the quest for evidence to sustain the liability of the non-admitting defendants in the light of the entire record.''

In this case the business was carried on in the name of Hahn Paint & Varnish Company, which was the trade-name under which C. A. Hahn did business. All moneys were paid to Hahn, who kept the bank account and drew checks thereon. Butz had no control over the money nor anything to do with it. He did not even have a key to the store. Conditional sales con-

tracts were executed under the name of "Kelvinator Company, by Clarence A. Hahn, sole owner." Hahn hired the extra help when it became necessary to have extra help in the refrigerator department. In fact, he employed without the knowledge of Butz, a man by the name of Bird, and sent him away to a service school, where for a few weeks he took special training in the servicing of refrigerators, and, when he came back, he was put to work, part of the time in the paint part of the business and the rest of the time in the refrigerator part. Butz had nothing to do with the hiring of Bird, and knew nothing about the arrangement which Hahn had made with him. Hahn told Bird that he intended to let Butz go. In fact, it is Hahn's own testimony that he had a right to fire Butz at any time that he saw fit, which of course is inconsistent with the theory of a partnership, for in actual experience one partner may not arbitrarily fire another. Partners are not fired. It takes more than one to dissolve a partnership, while firing is a solo process. Hahn carried compensation insurance on Butz; in other words, the policy of compensation insurance which he carried covered also the services of this claimant. Hahn himself testified that he did not consider Butz a partner "in the strict sense of the word," and the term "partnership" was never mentioned when they made the oral arrangement.

But the appellant argues that the agreement to participate in the profits of the enterprise was sufficient to make Butz a partner. We find that the American authorities are divided upon this question. This is due to the fact that in the early English cases of Grace v. Smith, 2 Wm. Blackstone 998, decided in 1775, and Waugh v. Carver, 2 H. Blackstone 235, decided in 1793, the English courts held: "Every man who has a share of the profits of a trade ought also to bear his share of the loss." But in 1860 this same question came before the English court in the case of Cox v. Hickman, 8 House of Lords Cases 268, and the decision of the earlier cases was reversed; the court holding: "It is not strictly correct to say that his right to share in the profits makes him liable for the debts of the trade."

In this country some of the states follow the early English rule—New York, Pennsylvania, and others. But this court is committed to the doctrine that there must be an agreement, express or implied, to share the losses, and that the mere sharing of the profits is not sufficient to show a partnership.

In the early case of Reed v. Murphy, 2 G. Greene 574, this court said:

"We think the court correctly instructed the jury that such a contract does not create a partnership. Mahan's connection with the business was not that of a partner; he had no specific interest or control in the business such as a partner ordinarily enjoys; no share of the profits as profits; but merely in the event that profits accrued he should receive a certain portion of them as compensation for services rendered as agent or clerk and not as partner. This question was examined in Price & Co. v. Alexander & Co. [2 G. Greene 427, 52 Am. Dec. 526], and under the views expressed in that case it is obvious that a person in business may employ another as agent or otherwise and agree to pay him a share of profits if any shall arise, as a compensation for his services without giving such person the rights or subjecting him to the liabilities of a partner."

In Johnson Brothers v. Carter & Co., 120 Iowa 355, at page 361, 94 N. W. 850, 852, we said:

"From these authorities may be deducted, as established in this state, the following principles: (1) That the agreement only to share profits will not constitute partnership, though evidence of existence of that relation. (2) The sharing of losses is essential in a partnership, though the undertaking to do so may be inferred from an agreement to divide profits, unless precluded by the terms thereof. (3) That payment for services, or for the use of money or property to be used in the business, may consist of a share of profits, without making of the loaner or employee a partner."

This court, in the case of Malvern National Bank v. Halliday, 195 Iowa 734, at page 738, 192 N. W. 843, 846, said:

"This court is committed to the doctrine that a sharing of profits alone is not enough to predicate a partnership. Haswell v. Standring, 152 Iowa 291, 132 N. W. 417, Ann. Cas. 1913B, 1326, and note. It is not necessary that an express agreement exists that each party shall bear a share of the losses which may occur, but it must be said under the agreement and as a legal consequence thereof that one participating in the profits must be liable for a share of the losses."

In the recent case of Kinney v. Bank of Plymouth, reported in 213 Iowa 267, 236 N. W. 31, this court reviews its former opinions, and again holds that the sharing of the profits does not create a partnership and that the essential element of the relation is the obligation to share losses also.

The obligation to share losses cannot be implied from an agreement to share profits. A person will often want to employ some one on a purely commission basis without giving him the rights or subjecting him to the liabilities of a partner.

A factor which enters into the consideration of the question in sharing profits and losses is the question of how the expenses of the business were to be borne. If the expenses are merely to be deducted from the share of the profits of one, he is not a partner.

This court, in McCarney v. Lightner, 188 Iowa 1271, at page 1282, 175 N. W. 751, 755, said:

"The testimony of the plaintiff himself is definite and emphatic that he was 'not to put up any money'. Whatever was to be charged against him was to be taken out of his profits. As far as he was concerned, only profits were contemplated. If there had been no profits, there would have been nothing against which loss could be charged as to him. Accepting this fact as testified to by him, it would have been a complete defense to any claim against him by Lightner for a contribution in the payment of losses. The case is therefore readily classified as an agreement for a share of the profits as compensation for his services as agent in the purchase and proposed sale of the property. There was no partnership in a legal sense as between the parties."

■■■ There is no claim made that Butz was to put up any money. The only thing he was concerned in was his share of the profits. If there had been no profits, he would have received nothing. It is conceded by Hahn that there was never anything said about Butz making any contributions to take care of losses if there were losses. Hahn assumed the responsibility of supplying the capital; the management and control of the business was placed in his hands; the business advertised in his name; contracts were signed by him as sole owner; he said he had the right to hire and fire the employees. He carried compensation insurance covering Butz.

In view of these facts, there can be no other conclusion

reached except that Butz was an employee of Hahn and therefore is entitled to compensation under the Iowa Workmen's Compensation Act.

■■■ II. Appellants strenuously argue that the deputy commissioner clearly erred in making an award of compensation for partial impairment of vision in both eyes and that it should have been limited under the evidence to the right eye for the reason that there is no evidence to support a finding that the injury resulted in any permanent disability as far as the left eye is concerned.

There is little question that the right eye was affected, and, while there is some conflict in the medical testimony as to the exact impairment, there was certainly sufficient evidence for the finding of the deputy commissioner.

We turn therefore to examine the record as to the injury to the left eye. It is true that in the beginning the injury was not considered to be as serious in its nature as that to the right eye. The medical expert, Dr. Clapp, to whom Butz was sent by Hahn at the time of the injury to his eyes and who took care of him during the months that followed, testified that in August of 1933 he had reported in writing that the vision of the left eye was not impaired as a result of the injury. Upon cross-examination, Dr. Clapp, referring to this report, said that "sometimes a physician thinks no impairment of vision will result and yet, nature in its endeavor to repair the injury keeps piling up excess tissue so that an opacified condition results." The surgeon then testified that that is what happened to the claimant. Later on Dr. Clapp examined claimant's left eye and testified that the vision thereof "measured 20/40, indicating twenty per cent reduction of vision in that eye." The only other proof pertaining thereto was the written report of Dr. H. H. Lamb, the medical expert for the appellants, which was admitted in evidence pursuant to agreement between the parties, in which he said, in substance: That, with the exception of a single scar on the cornea of the left eye, the same was normal, and that such scar did not encroach upon the pupillary area and should not interfere with vision. That he had been unable to find any other visible pathology which would produce an appreciable or permanent reduction in vision, except some astigmatism, which is commonly known to affect vision.

Thus we find there is evidence in the record—true, there is

a conflict—that supports the finding of fact by the deputy industrial commissioner and the industrial commissioner, that the vision of the left eye as well as that of the right was partially impaired.

This court has repeatedly held that it will not reverse the industrial commissioner upon a finding of fact that is fairly supported in the evidence. Shepard v. Carnation Milk Co., 220 Iowa 466, 262 N. W. 110, 111.

In Serrano v. Cudahy Packing Company, 194 Iowa 689, 190 N. W. 132, this court said:

"Evidence offered before the Industrial Commissioner is subject to the usual tests of credibility, and this is true although no witness contradicts. The finding of the Commissioner has the same force and effect as the finding of a jury."

Thus in the case at bar there was ample and competent evidence to support the finding that the appellee sustained a permanent partial impairment of vision in both eyes, and the judgment and decree of the lower court must be, and it is hereby affirmed.

In accordance with the stipulation of the parties to this action, now on file, the cost of printing appellee's brief and argument is to be taxed to the appellee; all other costs to be taxed to appellant.

KINTZINGER, C. J., and ALBERT, ANDERSON, DONEGAN, POWERS, PARSONS, RICHARDS, and HAMILTON, JJ., concur.