AUGUSTA MILES, Appellee, v. MATT J. MILES, Appellant.

**GIFTS:** Acceptance—Conditions—Necessity to Comply with. Acceptance of a gift carries the burdens attached thereto.

PRINCIPLE APPLIED: A husband executed, to his son, deeds to some $10,000 of real estate and a bill of sale to property returning a monthly income of over $200, and delivered them to his wife with directions to deliver them after his death to the son, on condition that the son agree in writing to pay the wife $30 per month during her life. This condition was inserted in the bill of sale and indorsed in the handwriting of the grantor on one of the envelopes containing the instruments. The son secured possession of all said instruments after the death of his father without executing the agreement to pay the wife (his step-mother) the $30, knowing at the time the conditions as to such payments. He recorded the deeds, but not the bill of sale, and took possession of all the property. He claimed to be a partner in the business covered by the bill of sale. He refused to make the payments to his step-mother. *Held,* the condition as to payments attached to the entire gift, and having accepted the gift he must make the payments.

**PARTNERSHIP:** Test of—Profits and Losses. In order to constitute a partnership, it must be shown that the parties agreed to share in the profits and losses.

**GIFT:** Acceptance—Conditions—Refusal to Satisfy—Action. One may not accept a gift and escape action to enforce a condition attached thereto.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, Judge.

SATURDAY, DECEMBER 19, 1914.

ACTION in equity to recover the sum of $30.00 per month from December 28, 1911, in consideration of a certain bill of sale. There was a trial to the court, and a judgment for $480.00, with the right to sue for future installments if not paid by the defendant. The defendant appeals.—*Affirmed.*

*Charles A. Clark,* for appellant.

*Voris & Haas,* for appellee.

PRESTON, J.—Plaintiff is the widow of J. M. Miles, who died intestate, a resident of Cedar Rapids, on December 28, 1911. About November 18, 1909, deceased, as plaintiff alleges,

1. GIFTS: acceptance: conditions: necessity to comply with.

in partial settlement of his affairs, executed three certain deeds to real estate and a bill of sale of his office and business and delivered the same to plaintiff for the defendant, with instructions to hold the same until the death of grantor, and then to turn said deeds and bill of sale over to defendant, upon defendant's agreeing in writing to pay plaintiff the sum of $30.00 per month during her lifetime. Such instructions were indorsed upon the envelope containing the deeds and bill of sale and were as follows:

"Deed of the Twins for my wife, Gussie. Bill of Sale of the business and office furniture to Matt, for my wife, Gussie.
"Instructions to Gussie.

"At my death go and get deed to Twins and the bill of sale recorded and bring them home with you. Keep the deed to Twins, and give Matt the bill of sale, or you keep it and let him have a copy of it, and let him accept in writing to you that he will comply with the conditions of paying you $30.00 per month; when he gives you this writing so agreeing to pay you, then give him the three deeds to the property described.

"Dated November 18, 1909.            "J. M. Miles."

After the death, and before the funeral, of deceased, defendant procured possession of the three deeds and bill of sale referred to, without the execution of such agreement to pay the sum of $30.00 per month, by going to plaintiff and representing that a daughter of deceased by a former marriage would make trouble about the property affairs, and stated to her that, to avert the threatened trouble, it would be necessary to record the deeds and other papers at once; thereupon plaintiff delivered the deeds and bill of sale to defendant, who took the same.

Defendant entered into possession of the property under the deeds and bill of sale, as we find from the evidence, although it is denied by the defendant. But defendant did not record the bill of sale, and he has refused to execute to plaintiff his agreement to pay her $30.00 per month, and has refused to pay her such sum.

Plaintiff alleges that defendant's right to the real estate covered by the deeds and the property covered by the bill of sale was conditioned wholly upon his execution of the agreement and payment to the plaintiff of $30.00 per month as part of the consideration for the same, and that defendant took possession of the property on December 28, 1911, and by such acceptance he has assumed the obligation to pay plaintiff said sum of $30.00 per month from the date of the death of said J. M. Miles.

The bill of sale recites:

"That in consideration of $1.00 and other valuable considerations, I, J. M. Miles, grant, sell and convey unto Matt J. Miles the following personal property now in possession of J. M. Miles, (myself), in Cedar Rapids, to wit: My real estate, loan, fire insurance, mortgage and loan business, in fact, all the business I have established and carried on in Cedar Rapids, together with all office fixtures, books and furniture, and everything belonging to my office. The further consideration of the above sale is that the property above

described shall remain in my own (J. M. Miles) possession until my death, and further consideration is that the said Matt J. Miles shall pay to my wife, Mrs. Augusta J. Miles, monthly, the sum of $30.00 during the term of her natural life, said $30.00 to be paid to her on the first day of each and every month in advance during her lifetime, and the said above bill of sale is given expressly on the condition that said Matt J. Miles shall faithfully and promptly pay the above $30.00 monthly to my wife, Augusta Miles."

The bill of sale is dated March 19, 1909, and is signed and acknowledged by deceased. In his answer, defendant averred that he was in partnership with deceased, his father, and that the partnership owned the property set out in the bill of sale; that defendant is the owner of an undivided half of such property; that defendant did not take possession of the property under the bill of sale, but was in and remained in possession as a surviving partner; that administration has been taken out in the estate of J. M. Miles, deceased, and that the probate court has exclusive jurisdiction.

Plaintiff and deceased were married December 2, 1908. Both plaintiff and her deceased husband had been married prior to their marriage to each other. There were no children by the latter marriage. By his first marriage, deceased had two children, both living at the time of his death, namely, defendant, Matt J. Miles, and a daughter, Agnes Hanna. Plaintiff had one child by her former marriage, Charles Thurston. Deceased had for a number of years been engaged in a successful real estate, loan and insurance business, and acquired considerable property. In anticipation of his death, and, as plaintiff claims, to settle his estate, deceased executed the deeds of conveyance and the bill of sale. There was a deed of the Twins, as two of his houses were called, to plaintiff. There were also three deeds to defendant, Matt J. Miles, and the bill of sale. One of the properties deeded to defendant was worth $6,000.00, another $2,500.00, and the third, $1,400.00,

according to defendant's own estimate. The business covered by the bill of sale at the time it was executed was profitable, yielding $200.00 or $300.00 per month or more. Defendant contends that the business decreased before the death of deceased because of his failing health, and after the death of deceased because clients were personal friends of his father. The four deeds and bill of sale, when executed by deceased, were placed in envelopes, and he called plaintiff and defendant together and in the presence of Mrs. Miles, told defendant that he had made the deeds and the bill of sale to the office, and that he gave them to Mrs. Miles so that if anything should happen to him they would not have to go into court or have any administration. The matter was talked over by the three of them in other subsequent conversations. When the papers were first given to Mrs. Miles by her husband she put them in her trunk in the bedroom and kept them there until her husband's death. The deed to the Twins, the three deeds to defendant and the bill of sale were in separate envelopes, but in one package and with a rubber band around them. The envelope containing the three deeds to defendant was indorsed in the handwriting of J. M. Miles:

"Emmons House—Flynn House—Sixth Avenue House—
For Matt J. Miles."

The bill of sale was in a separate envelope, marked:
"Matthew's Package."

On one of the envelopes was written the instructions to Mrs. Miles, as before set out. These instructions were in the handwriting of deceased and were upon the envelope at the time the deeds were handed to plaintiff by her husband in the presence of another person.

We shall not review the testimony. The facts, substantially as before narrated, are testified to by witnesses other than plaintiff and, although defendant contradicts them at some points, we find that the facts are established substantially

as stated. Deceased made statements to others after the execution of the papers as to what he had done and his intention. It seems quite clear that there was an understanding among the three of them that defendant was to have the three deeds, carrying with them the ownership of about $10,000.00 worth of real estate, and the bill of sale, carrying with it the ownership of the office and good will at the death of the old gentleman, but upon the condition that defendant should pay the old lady the sum of $30.00 per month during her life. Not only was it so talked but the written instructions to plaintiff were that she should not deliver the deeds until defendant had agreed in writing that he would make such payments, and to further evidence and emphasize the old gentleman's intention he embodied the condition in the bill of sale. It is shown that about two days before the old gentleman's death, defendant went to the house and inquired about the bill of sale, and whether it was properly acknowledged, and also inquired if Mrs. Miles had the deeds. On being advised that the bill of sale was witnessed and acknowledged and that Mrs. Miles still had the deeds, he said, "I am all right then." Mr. Miles died about five o'clock on the morning of December 28th. About nine or ten o'clock that same morning, according to the testimony, defendant came to the house and said to plaintiff that his sister was coming to the funeral and would make trouble and that Mrs. Miles had better let him have the papers so he could put them on record and prevent his sister from tying things up. Plaintiff went to her trunk and got the bundle of papers and gave it to defendant, saying that she hoped he would do the fair thing; she then broke down with crying and went to her bedroom. A son of plaintiff was present at this time and testifies that defendant told the old lady they would straighten things up afterwards, but that he wanted to get the papers recorded; that defendant read the instructions on the envelope and then handed it to the witness, who returned it to his mother. Defendant took the deeds and bill of sale and caused the deeds to be recorded, but withheld the

bill of sale from record, although he retained it in his possession. He took possession of the real estate described in the three deeds, as well as of the office, but refused to execute the agreement to pay plaintiff the $30.00 per month. Plaintiff repeatedly asked him to carry out the conditions.

On the trial, defendant claimed that two of the deeds were handed to him by the notary public at the time they were signed and acknowledged by his father, but he retained them only about an hour and his father took them again to stand as unrecorded deeds until his death, and if anything happened to defendant the old gentleman could destroy them. This last statement is testified to by the defendant. He says nothing about the third deed, however, although he admits receiving the three deeds from plaintiff running to him.

From all the testimony, we think there was no thought of a delivery of the deeds by the old gentleman to defendant at that time.

As to the alleged partnership between defendant and deceased, he introduced evidence showing that he was employed in the office by his father from 1903 to the spring of 1910 at a salary of from $25.00 a month in 1903, running up to $150.00 a month in 1910, and to establish partnership showed that the sign on the office door was changed in the spring of 1910 from J. M. Miles to J. M. Miles & Son; that the books were changed to the name of J. M. Miles & Son, as was the office stationery. He testifies that about this time his father retired from the active management of the business, receiving $100.00 a month from the proceeds of the office, defendant paying expenses and receiving the balance of the income, up to the time of the old gentleman's death. But plaintiff introduced in evidence a contract dated in 1903 and other documents, showing that the loan and insurance business was then carried on in the name of J. M. Miles & Son and that there was no change in the name in March, 1910; the original written contract between defendant and his father, dated December

2. PARTNERSHIP: test of: profits and losses.

22, 1904, and extended twice after that, shows the defendant was merely an employee in his father's office. What the real contract was between defendant and his father concerning the office after March, 1910, does not appear, except defendant's claim that his father received $100.00 a month from the income and defendant paid expenses and kept the balance for himself.

In order to constitute a partnership it must be shown that the parties agreed to share in the profits and losses. *Winter v. Pipher,* 96 Iowa 17. Defendant did not so show.

As before stated, defendant admitted the receipt of the deeds and the bill of sale, and that he placed them on record. Plaintiff and her son Charles say that defendant obtained the papers on the forenoon of December 28th, a few hours after the old gentleman's death. Defendant says he first learned of the existence of the bill of sale on the morning of December 30th, about eleven o'clock in the forenoon, but the deeds were filed for record at nine o'clock on December 30th. In another place in his testimony defendant says he received the deeds and bill of sale on December 29th. It is apparent that the deeds and bill of sale, handed to defendant at the same time and in the same package, were in his possession long enough that he had opportunity to examine all of them carefully. He accepted the deeds, conveying to him a large amount of real estate, and the bill of sale, conveying the office, and went into possession of the property. He must be held to accept the burdens with the advantages.

We think the trial court was justified in finding that defendant had knowledge of the facts in regard to the deeds and bill of sale before his father's death, and had knowledge of the conditions imposed on the gift, although defendant denies that he was present at any conversation between plaintiff and his father at which a bill of sale was mentioned; he says that he first learned of the contents of the bill of sale at his office on the morning of December 30th, but he corroborates plaintiff and her other witnesses in part when he

says that plaintiff informed him two days before the death of his father that deceased had made a bill of sale of the business and that he asked her as to its form, and she said she would find out and let him know that night whether it was regular in form. So that, with knowledge of the conditions, defendant took the deeds and bill of sale after his father's death, recorded the deeds, entered into possession of the property and retained the bill of sale. By so doing, he accepted the gift. The gift to defendant was a single gift, although different instruments, and the condition to pay plaintiff attached to the gift as a whole. Defendant may not separate the deeds from the bill of sale and accept the deeds and reject the bill of sale and its conditions. Having accepted the gift, defendant is bound to pay plaintiff.

It is contended by appellee that the disposition of the property was not testamentary in character; that the deeds and bill of sale conveyed a present interest, reserving to the donor a life estate, citing: *Saunders v. Saunders,* 115 Iowa 275; *Jones v. Caird,* 153 Wis. 384; *Wilson v. Carrico,* 140 Ind. 533; *Latimer v. Latimer,* 174 Ill. 418.

She also contends that, even if the bill of sale stood alone and had no connection with the deeds, it would still be valid and effective, even if testamentary, for it is witnessed and it is valid as an instrument of title, without being admitted to probate, citing: *Olleman v. Kelgore,* 52 Iowa 38; *Otto v. Doty,* 61 Iowa 23; *Richards v. Pierce,* 44 Mich. 444.

There is no argument in this court on behalf of the defendant. Without discussing the points just made and the authorities cited thereunder, we conclude, as we have already stated, that the deeds and bill of sale constituted one gift and were accepted as such. The gift as an entirety was subject to the condition of payment to plaintiff. Where a gift is accepted it is subject to all of the conditions attached. *Rood on Wills,* Sec. 625; *Berry v. Berry,* 31 Iowa 415, 418; *Stewart v. Wills,* 137 Iowa 16; *Moran v. Moran,* 144 Iowa 451, 463;

*Huston v. Huston,* 37 Iowa 668; 1 *Devlin on Deeds,* Sec. 285, p. 483.

3. GIFT: acceptance: conditions: refusal to satisfy: action.

Where a gift, qualified by a condition, is accepted, the person in whose favor the condition was made may enforce it by action. *Huston v. Huston, supra; Rood on Wills,* Secs. 623-4.

It is also contended by plaintiff that defendant took the property in trust to pay plaintiff the sum of $30.00 per month during her life, and the trust may be enforced in equity, citing: *Curtis v. Portland Savings Bank,* 77 Me. 151; *Sheedy v. Roach,* 124 Mass. 472.

Without further discussion of the matter and for the reasons given, we are of opinion that the judgment and decree of the trial court was right, and it is, therefore,—*Affirmed.*

LADD, C. J., EVANS and WEAVER, JJ., concur.