MALVERN NATIONAL BANK, Appellant, v. HERBERT HALLIDAY et al., Appellees.

**PARTNERSHIP: The Relation—Salient Features.** The salient features of an ordinary partnership are (1) a community of interest in profits and losses, (2) a community of interest in the capital employed, and (3) a community of power in administration. Record reviewed, and held to establish a partnership relation, and not the relation of landlord and tenant.

**PARTNERSHIP: Firm Property—Mortgage of Undivided Interest.** A mortgage by one partner of his undivided interest in partnership assets to secure his individual debt is subject to the superior equities of the other partners.

*Appeal from Mills District Court.*—EARL PETERS, Judge.

APRIL 3, 1923.

ACTION to equity to foreclose a chattel mortgage given by the defendant Halliday to the plaintiff to secure a promissory note which evidenced a loan by the plaintiff to Halliday. The defendant Judson contends that by reason of a contract of partnership between him and Halliday the mortgaged lien is inferior to his title and interest in said property. The trial court determined the equities in favor of the appellee Judson. Plaintiff appeals.—*Affirmed.*

*C. E. Dean* and *D. W. Whitfield,* for appellant.

*W. S. Lewis* and *Genung & Genung,* for appellees.

DE GRAFF, J.—This is an action in equity to recover from the defendants Herbert Halliday and his wife the sum of $2,965.88 evidenced by a promissory note bearing date March 1, 1921 and to foreclose a certain chattel mortgage given by the Hallidays to the plaintiff to secure said note. The primary question involves the relation or status of the defendants Halliday and Judson resulting from their written contract for the joint operation of a farm belonging to appellee Judson.

It is recited by the plaintiff bank in its petition that the defendant A. B. Judson entered into a written contract with the Hallidays on the 1st day of March 1920, and that under the terms and conditions of said contract Judson was to furnish his 280-acre ''farm and one half in money invested in stock, horses, cattle, hogs, chickens, had and kept on said land, and that the said Halliday was to furnish the other half of said money so invested, and to do all the work, farm said lands, and care for said stock, and each of said parties was to own one-half interest in said stock of all kinds and farm products grown on said land;'' that by virtue of said contract the defendant Halliday did move upon the land and farmed the same for the years 1920 and 1921; that the plaintiff had no knowledge of the terms of said contract, when it made its loan to the defendant Halliday and received the chattel mortgage to secure the payment thereof and which conveyed to the plaintiff the undivided one-half interest belonging to the Hallidays in certain personal property located on the Judson farm.

It is the claim of the plaintiff, and it is so alleged, that the interest of the defendant Judson in the property so mortgaged is junior and inferior to the plaintiff's mortgage lien, and judgment is prayed against the Hallidays in the amount due on the loan, and that the chattel mortgage be foreclosed against all of the property conveyed by said mortgage, that an accounting be had with the defendant Judson, and that plaintiff have judg- ment against the defendant Judson for the value of any of said mortgaged property not found or converted to his own use.

The Hallidays filed their answer admitting the truth of the material allegations of plaintiff's petition. The defendant Judson in his answer admitted certain allegations, but denied that the plaintiff has a first lien upon the mortgaged property except a certain Ford car, and avers the fact to be "that, when he took possession of said property, it was for the purpose of liquidating a valid and subsisting debt that was owing to him by the defendant Halliday, and that the same was for money due him on account of and by reason of the fact that, under and by virtue of his written contract of partnership between him and the said Halliday, he had the right and the option to advance any money that might be deemed necessary to carry on and advance the copartnership business between them, as provided for in their articles of copartnership, and which this defendant had advanced in the principal sum of $3,961.83, with interest thereon, which sums are represented by six certain promissory notes given by the said Hallidays to this defendant."

It is further alleged by the defendant Judson that at the time and prior to the making of said chattel mortgage that the officers of the plaintiff bank had notice and well knew that the said Halliday had given and executed said contract of partnership and special lien to this defendant; that Halliday had no interest, right or title in or to said property or any part thereof referred to and covered by the said chattel mortgage except such as was given him under the terms of the contract of partnership. These are the material allegations of the pleadings.

I. The primary issue is one of law. Does the agreement under which the farm operations were conducted, and which it is claimed by the defendants created a partnership between the parties thereto constitute in fact and in law a partnership?

1. PARTNERSHIP: the relation: salient features.

There is no exclusive test to determine the question involved. It is impossible to formulate an exact and precise definition of a partnership, and any attempt to reconcile the conflicting cases in this particular is futile. In general terms a partnership is a contractual association with certain incidents recognized by law for the convenient transaction of lawful commerce or business. No one fact or circumstance can be taken as a conclusive criterion. The initial step to reach a correct

conclusion in this case is to study the pleaded contract which is affirmed by the appellee to create a partnership, and denied by the appellant. This will afford at least the test of the intention of the parties which is a material consideration.

The object and purpose of the mutual relations of Halliday and Judson are fairly well defined in the written contract in evidence. It was a contract of lease as well as a contract for the joint operation and management of the farm. It defined the name of the business, what each member was to do in furnishing his share of the necessary capital and labor which went into the business, how the business was to be conducted and how the property and the proceeds were to be divided and disposed of after all expenses were paid.

It was stipulated in the contract that the firm should be known as Judson and Halliday. Certain paragraphs read as follows: ''Division of Receipts and Expenses. The renter furnishes the labor against the landowner's land, the productive live stock is furnished by the firm and the net farm receipts are divided equally between the landowner and the renter. * * *

Hogs. The firm will furnish approximately 25 brood sows. It is the intention to make hogs one of the principal sources of income. * * *

Cattle. The firm will furnish about....milk cows to be kept on the farm. Receipts of dairy products sold belong to the firm. If milk and cream are sold to a creamery, the value of the butter used by the landowner and the renter is to be taken out of their respective shares. The renter and the landowner is to have all the necessary milk and cream to use in the home.

Other Kinds of Live Stock. Other kinds of live stock such as feeding cattle, hogs and sheep will be furnished by the firm and all the expenses and receipts will be divided equally.

Marketing. The renter agrees to deliver to the local market without charge to the landowner, all crops, live stock, or live stock products, and the proceeds shall be deposited to the credit of the firm.

Accounts, Inventories. A detailed inventory of all firm property shall be made on the 1st of March each year during the life of this contract, and the renter shall keep an accurate account of all firm business.

Final Settlement. If the parties cannot agree upon final settlement, one to buy the other's interest in the firm property, said property shall be sold on the market and the proceeds divided.

Note May be Given by Renter. The value of the interest in live stock and feed purchased by the firm from either of the partners shall be set off against the other and the difference owed by one partner to the other paid in cash. Provided, however, that if the difference is owed by the renter, he may give the landowner his note for the same, payable in . . . . months, with interest at . . . . per cent per annum. In the event of the termination of this lease, before the maturity of said note, the note shall become due immediately, and in any event, the debt shall constitute a prior lien on the renter's share of live stock, machinery, feed or other supplies on the farm."

We deem it unnecessary to recite in detail other provisions of the contract. In passing it may be said that both the subscribing parties treat the contract as one of partnership and their testimony, if undisputed and not inconsistent with the terms of the contract itself, must control.

The business was given a "firm name" which is a circumstance to be considered as having some probative force in determining the status. There is a common intention declared to conduct the business in such a manner that there results a community of interest in profits and impliedly in losses.

This court is committed to the doctrine that a sharing of profits alone is not enough to predicate a partnership. *Haswell v. Standring,* 152 Iowa 291 (Ann. Cas. 1913 B. 1326 and note). It is not necessary that an express agreement exists that each party shall bear a share of the losses which may occur, but it must be said under the agreement and as a legal consequence thereof that one participating in the profits must be liable for a share of the losses. The mutual liability for losses may and will be implied where the fact of partnership is established by other evidence. *Veenstra v. Mathews,* 194 Iowa 792; *Lutz v. Billick* 172 Iowa 543; *Johnson Bros. v. Carter & Co.* 120 Iowa 355.

It may also be said that the sharing of profits is not *per se* conclusive of partnership, but it is to be considered as cogent evidence of the relationship. It will also be observed that the

agency of a partner results from partnership rather than partnership from agency. In the application of particular tests in determining partnership there is frequently a confusion of conclusion with the premises upon which the conclusion is based, and the test or qualification becomes a mere repetition of the question for the solution of which a test is sought.

A partnership has its origin in contract either express or implied. It is the result of contract creating a relation or status, and in the solution of the problem presented a court necessarily attempts to find the legal elements essential to the creation of that status. The salient features of an ordinary partnership are (1) a community of interest in profits and losses (2) a community of interest in the capital employed and (3) a community of power in administration. These are the primary tests and constitute the indicia of the existence of a partnership. The relation is predicated on mutual consent and is evidenced by the terms of the contract, the conduct of the parties, and the circumstances surrounding the transaction. *Westcott v. Gilman,* 170 Cal. 562. Whether a landlord and tenant create a partnership relation in the management and operation of a farm primarily depends upon the agreement between them. The mere taking of profits as rent for premises used in the business is not sufficient to create the landlord a partner in the business. If there is no mutual interest in the capital invested, and the share of the profits to the landlord is not paid to him as proceeds of a joint venture, but as rent, the partnership relation is not established. *Thayer v. Augustine,* 55 Mich. 187. But see *Reynolds Bros. v. Pool,* 84 N. C. 37; *Brown v. Higginbotham & Co.* 5 Leigh (Va.) 583.

Under the facts of the instant case and the contract in evidence we conclude that a partnership relationship was intended to exist and was in fact created.

II. In construing a partnership relation and the rights incident thereto between the parties themselves the question is one for determination based on the language of the partnership agreement and the conduct of the contracting parties to each other. In the determination of the rights of third parties the basis of the inquiry shifts materially, and the

2. PARTNERSHIP: firm property: mortgage of undivided interest.

fundamental questions are (1) what notice or knowledge had the third party of the partnership relation (2) what had the third party the right to believe from the language of the contract and from the conduct of the parties to it and (3) was the third party put upon inquiry to learn the status of the relationship before dealing with a party to the contract in an individual capacity.

The record in the instant case fairly supports the following conclusions: (1) that all of the personal property described and covered by the chattel mortgage with minor exceptions was the undivided one half of the partnership property of the firm of Judson and Halliday (2) that the chattel mortgage was executed and delivered by the defendant Halliday to the plaintiff without the knowledge or consent of the appellee Judson (3) that at the time of the execution and delivery of the chattel mortgage to the plaintiff and prior to that date the officers of appellant bank had knowledge and notice that the personal property covered by the mortgage was the partnership property of Judson and Halliday.

The defendant Halliday talked over his business affairs with the cashier of the appellant bank before and after moving to the Judson farm. We quote the record briefly. Halliday testified: "I had been doing business with the Malvern National Bank before I moved on the Judson farm. I talked with Fred Durbin, the cashier of the bank, about moving to the Judson land. I told him I was putting my property into sort of partnership with Mr. Judson, and we would run the farm under the arrangement. I was going to need a little more money, and I told him of my plans."

Upon cross-examination he testified: "I told him I was to rent the Judson farm; that everything would be owned together. He would buy a half of my property and I a half of his, and the business would be run as a firm." Upon re-examination he stated: "About the time we gave the bank the chattel mortgage, I think Mr. Durbin asked me if I owed Mr. Judson anything, and I told him I did."

The cashier of the bank testified: "Before Halliday moved on the Judson land, he talked with me about it,—what he wanted to do up there; that he was going to rent the farm and go in on an equal share proposition with Mr. Judson; that he was going

to put up his labor there against Mr. Judson's farm; that he was going to farm the farm and divide whatever the profits would be that was raised on the farm.''

Upon cross-examination he stated: ''He said it was a joint stock share proposition. I knew, whatever stock was there, that Judson owned an interest in it,—yes, sir.''

It is not within the authority or power of a partner to mortgage or sell his undivided interest in the partnership property to secure his individual debt and under such circumstances the mortgagee or vendee takes nothing thereunder except the surplus if any after the partnership business has been settled. *Tuller v. Leaverton,* 143 Iowa 162.

Judson in loaning money to his partner Halliday in the conduct of the firm business was exercising a right defined and contemplated by the contract of partnership and he became a creditor of the firm. *Capital Food Co. v. Globe Coal Co.* 142 Iowa 134.

Under the facts and the law of this case the equities must be held to be with the appellee and our conclusion is that the judgment and decree entered should be—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.