FRED S. TAYLOR, Appellant, v. SUCCESSFUL FARMING PUBLISH-
ING COMPANY et al., Appellees.

**PARTNERSHIP:** Profits and Losses. A sharing of profits and losses is an essential element of a partnership.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

DECEMBER 11, 1923.

REHEARING DENIED MARCH 14, 1924.

ACTION to recover the purchase price of certain hogs claimed to have been sold by plaintiff and his assignors to the defendants. The court directed a verdict in behalf of the defendants, and plaintiff appeals.—*Affirmed:*

*A. D. Pugh,* for appellant.

*Lehmann, Seevers & Hurlburt,* for appellees.

FAVILLE, J.—This action is brought upon seven counts. Two of these are for hogs claimed to have been sold by appellant, or the firm of which he was a member, to the appellees. The remaining counts are for hogs claimed to have been sold by various individuals to appellees, which claims have been duly assigned to appellant.

The appellee Successful Farming Publishing Company is a corporation, which is engaged in the twofold business of publishing a farm journal known as "Successful Farming," and in operating a certain stock farm near the city of Des Moines. Upon this farm are kept pure-blooded cattle, and also pure-blooded hogs. Because of this, the farm is referred to as the "Meredith Jersey Farm," and also as the "Meredith Hog Farm." The appellee E. T. Meredith is the sole owner of the stock of the said corporation, and the publication of the said paper and the operation of said farm are conducted under his general management. One Townsend was employed by Meredith in the active management of said farm, and had employed as his assistant one Courtney.

It is the contention of appellant that all of the hogs involved in the seven sales in controversy in this action were sold to appellees, and that appellees became and are liable to pay the purchase price therefor. It is the contention of appellees, however, that none of said hogs were purchased by them, but that the said hogs were purchased by Townsend in his individual capacity, and that he, and not appellees, is liable for the pur-

chase price thereof. This presented a fact question, upon which the court directed a verdict in behalf of appellees.

It is impossible, within the reasonable length of an opinion, to set out in detail all of the testimony offered by appellant to sustain his contention in regard to the various sales that were made. A brief résumé will suffice.

Townsend, the manager of the farm, was a witness in behalf of appellant. It appears that Townsend became ambitious to engage in the pure-bred hog business on his own responsibility. He had, at various times, bought hogs for appellees, which hogs had been paid for by appellees and placed upon the farm. Townsend entered into negotiations with the firm of Taylor & Taylor, of which appellant is a member, in regard to the purchase of a certain boar, at the price of $3,000. Regarding this transaction Townsend testified as follows:

"I did not feel justified in buying for the Meredith Stock Farm or Mr. Meredith, because of the price. I questioned whether Mr. Meredith would see that value in the boar, and I did not believe he would ratify the purchase at that price, and so stated to Mr. Taylor. * * * The boar was to be shipped to the farm, and if I wasn't satisfied with him,—having bought him without seeing him,—I was entitled to ship him on to Taylor's, at What Cheer. * * * At that time, I think Mr. Meredith was in Washington,—he was away from home. Sometime after that, I talked with Mr. Meredith about this hog. I can't give the date,—that same fall, about November 1st, or later. It was some few weeks after I purchased the boar, and he had been delivered to the farm. I got on the train with Mr. Meredith, and rode up to Kelly, in order to talk to him. I explained to Mr. Meredith I had arranged to purchase this boar, and I had made the arrangement solely on my own responsibility, waiting an opportunity to talk the matter over with him, and see whether he wanted to go in and buy an interest in the boar and the other sows I had bought, or whether he would permit or was agreeable at that time to a straight partnership arrangement. I told Mr. Meredith I was in a position to move the hogs off his place if he didn't want them there, or didn't want me to have them there, and Mr. Meredith told me he was not agreeable to a partnership arrangement on the basis of an investment of an equal amount

of capital, but he said: 'Townsend, I am not going to object to your bringing hogs on the place,—any hogs you may want to buy,—and keep them there with an equal division of the expenses; and when they are sold, if your hogs make a profit, you will be entitled to the profit, and if they make a loss, you will have to stand the loss; and the same way with hogs I already owned, and were on the place. In other words, you put hogs on the place, and run them with mine; but we will keep them separate.' There was no arrangement about sharing the losses. We were to prorate the expenses according to the number of hogs each of us had. * * * I told Mr. Taylor I was buying it, and was short of money, and wanted time until I sold it, to pay for it. I did not say anything about buying it for Mr. Meredith or for Successful Farming. I told Mr. Taylor I wanted to go into the pure-bred stock business, previous to and ever since I took charge of Mr. Meredith's farm, and that I was going in with the purchase of this animal. I agreed to pay $1,500 cash, and subsequently paid $1,000, within a couple of weeks, by my personal check, Exhibit 1, payable to Mr. Taylor. The amount is $1,000, dated Dec. 9, 1920. That was given in payment of the purchase of hogs,—in the purchase of Carmine Arch Back First, the boar. That was part payment for the boar. That was on my personal account, in which Mr. Meredith had no interest. * * * I can't remember Mr. Meredith's words, but I know I inferred from his conversation that, for the time at least, there should be a strict account kept on the individual hogs in the yard. The hogs were to be kept separate. * * * Q. Did Mr. Meredith or the Publishing Company ever have any interest in any of the hogs involved in this suit? A. No.''

Shortly after the purchase of the boar, Townsend bought other hogs of appellant's firm, for which he gave notes signed by himself personally. All of Townsend's notes were later renewed, and included in a single note signed by him personally; and no claim was made at any time by appellant that the notes should be signed by appellees. Afterward, Townsend bought other hogs from the different parties whose claims were assigned to appellant. For one lot of these hogs Townsend gave his personal note, and subsequently made a partial payment thereon, and gave a renewal note for the balance. In one or two in-

stances, Courtney signed notes with Townsend for the purchase of the hogs. None of these notes were signed by appellees, nor was any claim made by appellant and his assignors that they should be so signed. The certificates of registration that were furnished showed that the hogs were transferred to Townsend. After the hogs were taken to the Meredith farm, it was possible to distinguish the Townsend hogs from those belonging to appellees. The mature hogs bore a steel label in the ear, bearing the initials and a number for identification. The young pigs were marked by cutting notches in their ears, and a record was made of each animal, so that the parties could tell to whom the hog belonged.

On March 11, 1921, a sale was held of the hogs on the Meredith farm. At that time, seven hogs belonging to Meredith were sold, and twenty-eight of the Townsend hogs were sold. · A settlement was effected between Townsend and Meredith, in which the expenses of the sale were apportioned between the parties according to the number of hogs each had at the sale. In this settlement, Townsend was allowed and paid by Meredith a charge for the services of the animal he had purchased from appellant. After the sale, Townsend left the Meredith place, and took away the hogs he then owned, including the $3,000 boar.

Appellant places great dependence, in argument, upon the manner in which the March sale was advertised and conducted. The sale was extensively advertised, and was held at the state fair grounds at Des Moines. The catalogs of the sale bore the inscription: "Meredith Hog Farm, E. T. Meredith, Owner. Lynne P. Townsend, Mgr." A picture of the $3,000 boar appeared on the front page of the catalog, and Meredith's picture appeared on the second page. Meredith was present at the sale, and made a talk. The sale was clerked by a bank, and the proceeds were turned over in gross to the appellees, who held them until the settlement was effected between appellees and Townsend. Separate accounts were kept of the Meredith hogs that were sold at the sale, and of the Townsend hogs.

The foregoing is but a summary of the evidence in the case. But three questions are ultimately involved in the determination of this appeal: (1) Were Townsend and appellees in fact partners in the purchase of these hogs, so that appellees are

liable for the purchase price? (2) Are the appellees liable to be held as partners by reason of any holding out or conduct that estops them to deny that such partnership existed? (3) Was Townsend the agent of appellees, so as to bind them?

I. As between the parties, partnership is a matter of contract; and we have frequently announced the familiar rule that, to constitute a partnership, there must be a participation in both the profits and losses of a joint business undertaking. *Winter v. Pipher & Co.,* 96 Iowa 17; *Loetscher v. Dillon,* 119 Iowa 202; *Haswell v. Standring,* 152 Iowa 291; *Miller v. Baker,* 161 Iowa 136; *Miles v. Miles,* 168 Iowa 153; *Malvern Nat. Bank v. Halliday,* 195 Iowa 734.

It must be held that, under the undisputed evidence in the case at bar, there was no proof of the existence of any partnership between Townsend and appellees that would justify the court in submitting to the jury a determination of that question. The hogs for which suit is now brought were purchased by Townsend on his own account. He gave his own notes as evidence of such purchases. The certificates of registration were made out to him. Separate accounts were kept of the animals. He was charged with and paid for the feed of his animals, and the proceeds of the sale of said animals were accounted for and turned over to him.

We have heretofore set out sufficient of the record to indicate that, under Townsend's testimony, there was an entire failure to establish the contention that Townsend and appellees were partners in the purchase of said hogs. There was nothing for the court to submit to the jury upon this question.

II. Are appellees to be held as partners of Townsend in the purchase of said hogs by reason of any holding out, or on the theory of estoppel?

There is no claim that appellant or any of his assignors sold the hogs in question to Townsend by reason of any belief on their part, or because of any act on the part of appellees which caused them to believe, that Townsend was purchasing the hogs for himself and the appellees as partners. On the contrary, the evidence is to the effect that Townsend disclosed to appellant and his assignors, in making the several purchases, that he was buying the hogs on his own responsibility and for

his own benefit. He gave his personal checks and personal notes in payment for the same. There is no evidence that appellant had the belief that Townsend was representing that the appellees had any interest in the purchase of said hogs. He did not so represent. The notes were renewed by Townsend individually, and it was not until about the time this action was commenced that appellant or any of the other parties who sold hogs to Townsend made any claim in any way that appellees were liable for the purchase price of said hogs. Much is said in argument about the sale that was held in March, and the manner in which the catalog of said sale was prepared, and the participation of Meredith in said sale. The sale took place long after the hogs had been purchased by Townsend. There is nothing about the manner in which the sale was advertised or conducted, or the proceeds handled and divided, that is in any way inconsistent with the claim of appellees and the testimony of Townsend, to the effect that animals belonging to both parties were sold at the sale, and separate accounts kept, and the expenses shared pro rata, and a proper division of the proceeds made. Such an arrangement did not make the parties partners in fact, nor was there any holding out upon which any estoppel can be predicated in favor of appellant, nor anything that could be construed as an admission that a partnership existed.

III. Appellant contends that Townsend was the agent of appellees in the purchasing of the hogs in question, and that appellees are bound by his acts.

The fact that Townsend was in the employ of appellees and acted as manager of the farm did not prevent him, with the consent of his employer, from purchasing the hogs in question on his own responsibility, and keeping the same on the Meredith farm, under the arrangement in regard to expenses as testified to by him. Under the record, he was in no way the agent of appellees in the purchase of these hogs. He had no authority, express or implied, to so purchase them for and in behalf of appellees. There is no evidence in the record that would sustain a verdict of a jury finding that Townsend had any such authority, either express or implied, as agent of appellees, to purchase the hogs in question for and in behalf of appellees. The fact that Townsend may have had authority from appellees to pur-

chase other hogs for appellees that were taken on the Meredith farm did not make him the agent of appellees to purchase the hogs in question, when in fact he was buying them for himself, and assuming the payment therefor in his individual capacity, and was so acting with the knowledge and consent of his employer. The record does not present a case of a ratification by a principal of an unauthorized act by an agent, and there is nothing in the record that estops appellees from claiming that there was no such authority on the part of the agent.

The correspondence between the parties, as shown in the record, adds nothing to appellant's contention.

A careful examination of the record in the case satisfies us that appellant failed to establish any liability on the part of appellees for the purchase price of any of the hogs in question.

The trial court did not err in directing a verdict for appellees, and the judgment appealed from must be, and it is, affirmed. The appellant's motion to strike appellees' amendment to the abstract, which was submitted with the case, is overruled.—*Affirmed.*

PRESTON, C. J., EVANS and ARTHUR, JJ., concur.