FARMERS & MERCHANTS NATIONAL BANK of Fort Worth, Appellant, v. W. E. ANDERSON et al., Appellees.

No. 41812.

SEPTEMBER 26, 1933.

Gamble, Read & Howland, for appellant.

Jepson, Struble & Sifford, Naglestad, Pizey & Johnson, Gill & Gill, and Gleysteen, Purdy & Harper, for appellees.

DONEGAN, J.—On the 20th day of February, 1919, one H. L. Houghton, H. E. Trowbridge, and F. C. Shoemaker executed articles of association of an unincorporated joint-stock association to be known as Sammies Banking & Investment Company. This association was organized, and the articles of association executed and recorded at Fort Worth, in Tarrant county, Texas, which place was named as the location of its principal office. The general purposes of the company were the purchase and sale of royalties, in oil and gas or other minerals, and the holding and dealing in such royalties, or royalty rights, and the development of oil lands by prospecting thereon for oil, gas, or other minerals, and the buying of oil lands, leases for the developing of same for oil and drilling on such leases or fee purchases, the selling of such oil, gas, or minerals produced from such lands, and other activities mentioned in the articles of association for the purpose of doing whatsoever is requisite or necessary or convenient in the conduct of a producing oil and gas company or the buying and selling of said royalties, oil

lands in fee, leases on same, and all products. The capital stock of the company was $1,000,000 divided into 100,000 shares of the par value of $10 each, and a form of the certificate to be issued to shareholders was set out in the articles of association. The articles also provided that the business of the company should be managed by a board of trustees, then consisting of three members, and of such additional trustees as thereafter might be provided for and agreed upon by the present trustees board; that such trustees should execute a declaration of trust which would be binding upon them, the survivor or survivors of them, their successors, and their survivor or survivors; that the trustees, their survivor or survivors, or their successors, should have no power to bind the members or shareholders personally; that in every contract entered into relating to the business of the company, its property, or any part thereof, reference must be made to said declaration of trust, and the person, firm, or corporation contracting with such trustees must look only to the funds and property of the company for the payment of any debt that might become due or payable; and that neither the trustees nor shareholders, present or future, should be personally liable therefor, or for any debt incurred or engagement or contract made by the board of trustees, or any officer, agent, or servant acting under them or in behalf of the company. The provision for the non-liability of the shareholders for debts or obligations of the company was also contained in the form of membership certificate and in the declaration of trust which was executed in accordance with the articles of association.

The said Houghton, Trowbridge, and Shoemaker accepted said trust as such trustees, and on the 21st day of February, 1919, executed such declaration of trust, which was also filed and recorded in the office of the clerk of Tarrant county, Texas. On March 13, 1919, the said Houghton, Trowbridge, and Shoemaker, being then the only shareholders and trustees of said association, executed an amendment to the articles of association, pursuant to authority therein contained, whereby the name of the association was changed from Sammies Banking & Investment Company to Security Banking & Investment Company. This amendment to the articles of association was likewise recorded in the office of the county clerk of Tarrant county, Texas.

Thereafter, and some time prior to the 28th day of April, 1922, the defendants became owners of shares of stock of said association.

On the 28th day of April, 1922, said Security Banking & Investment Company, by its president, H. L. Houghton, and by its secretary and treasurer, F. C. Shoemaker, executed and delivered to Farmers & Merchants National Bank of Fort Worth, Texas, plaintiff-appellant herein, its promissory note for $58,489, due ninety days thereafter. Payment of such note not having been made when due in accordance with the terms thereof, plaintiff-appellant filed its petition in this action in the district court of Woodbury county, Iowa, on the 11th day of January, 1924. Such petition, in addition to alleging the facts already set forth, contained the further allegations that the defendants, and each of them, are owners of shares of stock in, and are members of, such unincorporated joint-stock association; that, by reason of the articles of association as amended, and said declaration of trust, a joint adventure was formed which constituted a binding partnership or joint adventure of the defendants and other shareholders in and members of said unincorporated joint-stock association; that at all times since the organization of such association, by the law of the state of Texas and under the articles of association and amendment thereto and declaration of trust, the defendants are liable jointly and are each liable individually and as partners upon the aforesaid promissory note. Said petition asks judgment against the defendants, and each of them, for the sum of $48,786.62, with interest, attorney's fees, and costs. Copies of the articles of association, of the amendment thereto, and of the declaration of trust, are attached to the petition and made a part thereof.

Four separate demurrers to the petition were filed by different defendants herein. The trial court sustained the demurrers to the petition, and plaintiff, electing to stand upon its petition, appeals from this ruling of the court. The errors assigned by plaintiff for reversal are:

"(1) The trial court erred in sustaining the demurrers for the reason that the material facts well pleaded in plaintiff's petition sustain the cause of action relied upon against the defendants jointly and severally, on the theory that defendants were partners.

"(2) The trial court erred in dismissing the plaintiff's petition."

Appellant contends that the promissory note in suit being a Texas contract, the association having been organized, domiciled,

and conducting its business in Texas, the law of that state should govern. The petition is silent as to the residence of the defendants and as to the place where their contracts to purchase shares in the association were entered into. Appellees contend that the contracts of subscription fix the rights and liability of the defendants, and that, in the absence of any showing to the contrary, the presumption arises that the defendants are citizens of this state, and that such contracts were entered into by them in this state. In Van Patten & Marks v. Bedow & Looft, 75 Iowa 589, 39 N. W. 907, 908, it is said:

"It is true that defendants' residence and the place of the contract may have been in another state. But the presumption arises that parties to actions are citizens of the state, and that the causes of action arose in the state until the contrary appears."

There appears no reason why the rule thus stated in the Van Patten & Marks case should not govern in this case.

Aside from the authority of this precedent, however, and treating this action as a transitory action, we believe there is good ground for refusing to follow the principle of comity in this case. The particular phases of the Texas law which appellant contends are applicable to and should be decisive of this case are found in the decisions of the Supreme Court of Texas in the cases of Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 554; Victor Refining Company v. City National Bank, 115 Tex. 71, 274 S. W. 561; and Hollister v. McCamey, 115 Tex. 49, 274 S. W. 562. All of these cases were decided by the Supreme Court of Texas at the same time. In the case of Thompson v. Schmitt, the court held that an association organized under articles and a declaration of trust, similar to the articles and declaration of trust involved in this case, did not constitute a common-law trust; that the articles and declaration of trust did not constitute a compliance with the statutory provisions for limited liability of special partners under limited partnerships; and that, as such articles and declaration of trust provided for a community of interest and a sharing of profits by the shareholders, this constituted a partnership, regardless of any provisions in the articles or declaration of trust or certificates of the shareholders by which they were not to be held for any of the liabilities of the association. The Victor Refining Company case referred to the Thompson case as authority for its holding that the trial court did not err in refusing to receive evidence offered to

show the plaintiff creditor's knowledge of the provisions of the articles declaring shareholders not liable for debts. The Hollister case referred to both the Thompson case and the Victor Refining Company case as decisive of the propositions that the members of such an association were liable as partners, regardless of the provisions of the articles of association or the knowledge of the creditor in regard to such provisions.

Appellees contend that, to apply such a rule to the facts and circumstances of this case is contrary to good morals, to the principles of abstract justice, and to the public policy of this state, and that this case should be determined in accordance with the law of the state of Iowa.

It is quite apparent that there is an absolute conflict between the Texas courts and this court in regard to the elements which must be shown to exist in order to constitute a partnership. Under the rule of the Texas courts, a community of interest in the capital and a sharing in the profits will constitute a partnership. Under this rule a .partnership may exist without any agreement or intention that there should be a sharing of losses, or even in the face of an absolute agreement to the contrary. Under the holdings of this court, on the other hand, there can be no partnership where there is not an agreement, either express or implied, for liability for losses. As said in Malvern National Bank v. Halliday, 195 Iowa 734, 192 N. W. 843, 846:

"A partnership has its origin in contract, either express or implied. It is the result of contract creating a relation or status, and in the solution of the problem presented a court necessarily attempts to find the legal elements essential to the creation of that status. The salient features of an ordinary partnership are (1) a community of interest in profits and losses; (2) a community of interest in the capital employed; and (3) a community of power in administration. These are the primary tests and constitute the indicia of the existence of a partnership. The relation is predicated on mutual consent, and is evidenced by the terms of the contract, the conduct of the parties, and the circumstances surrounding the transaction."

The fallacy, for such we consider it, that community of interest in capital and sharing of profits are sufficient to constitute a partnership, regardless of the intention or agreement of the parties as to liability for losses, is not of recent origin. Its origin and de-

velopment, and the allegiance of this court to what we consider the just and reasonable rule, are briefly but clearly stated in the case of Kinney v. Bank of Plymouth, 213 Iowa 267, 236 N. W. 31, 35, in which Chief Justice Faville, speaking for the court, said:

"It was early laid down as a rule that participation in profits 'as profits' made one a partner and liable as such for losses. The parent cases announcing such a doctrine were Grace v. Smith, 2 Wm. Blackstone 998, decided in 1775, and Waugh v. Carver, 2 H. Blackstone 235, decided in 1793. In the former case the court said:

" 'Every man who has a share of the profits of a trade ought also to bear his share of the loss.'

"The same rule was announced in the Waugh case.

"The question again came up in the English Court in 1860, in the case of Cox v. Hickman, 8 House of Lords Cases *268. The best discussion is found in the opinion of Lord Cranworth, in which he said:

" 'It was argued that as they would be interested in the profits, therefore they would be partners. But this is a fallacy. It is often said that the test, or one of the tests, whether a person not ostensibly a partner, is nevertheless, in contemplation of law, a partner, is, whether he is entitled to participate in the profits. This, no doubt, is, in general, a sufficiently accurate test; for a right to participate in profits affords cogent, often conclusive evidence, that the trade in which the profits have been made was carried on in part for or on behalf of the person setting up such a claim. But the real ground of the liability is, that the trade has been carried on by persons acting on his behalf. When that is the case, he is liable to the trade obligations, and entitled to its profits, or to a share of them. It is not strictly correct to say that his right to share in the profits makes him liable for the debts of the trade.'

"The American authorities are divided along the two lines indicated by the English decisions. The early English rule appears to be followed in New York and Pennsylvania. Leggett v. Hyde, 58 N. Y. 272, 17 Am. Rep. 244; Wessels & Co. v. Weiss, 166 Pa. 490, 31 A. 247.

"The leading American decision following the rule of Cox v. Hickman is Beecher v. Bush, 45 Mich. 188, 7 N. W. 785, 789, 40 Am. Rep. 465. After an exhaustive review of the authorities, that eminent jurist, Justice Cooley, said:

" 'It is needless to cite other cases. They cannot all be reconciled, but enough are cited to show that in so far as the notion ever took hold of the judicial mind that the question of partnership or no partnership was to be settled by arbitrary tests it was erroneous and mischievous and the proper corrective has been applied. Except when one allows the public/ or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of partnership are to be found. And what are these? At the very least the following: Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers however by agreement between the parties themselves may be restricted at option, to the extent even of making one the sole agent of the others and of the business.' "

In the case now before us we are not concerned with what is sometimes called an "ostensible partnership" or a partnership by estoppel. There is in this case no claim that defendants by their conduct or by holding themselves out as partners misled the plaintiff in any way. A reading of the decisions of this court clearly establishes the rule in this state to be that a real partnership, such as we are here considering, can be constituted and created only by agreement of the parties entering into such relation with each other; that, while it is not necessary that such agreement should be express as to all its terms, it is necessary that it be shown that it was the understanding and intention of. the parties that there be a community of interest in capital, a sharing of the profits, and a mutual liability for the losses; and that, in the absence of any one of these elements, there can be no real partnership. Malvern National Bank v. Halliday, 195 Iowa 734, 192 N. W. 843; Veenstra v. Mathews, 194 Iowa 792, 190 N. W. 382; Taylor v. Successful Farming Publication Co., 197 Iowa 618, 196 N. W. 77; Kinney v. Bank of Plymouth, 213 Iowa 267, 236 N. W. 31; De Long v. Whitlock, 204 Iowa 701, 215 N. W. 954; Haswell v. Standring, 152 Iowa 291, 132 N. W. 417, Ann. Cas. 1913B, 1326; Hanley v. Telephone Co., 150 Iowa 198, 129 N. W. 807; Johnson Bros. v. Carter & Co., 120 Iowa 355, 94 N. W. 850; Wells v. Flynn, 191 Iowa 1322, 184 N. W. 389, 17 A. L. R. 710; 47 Corpus Juris, p. 666, section 60; p. 673, section 66; p. 699, section 94.

It is quite true that this court has repeatedly stated that it is not necessary that there be an express agreement establishing mutual liability for losses, and that, where the community of interest in capital and division of profits is clearly shown, the mutual liability for losses will be implied unless shown to be inconsistent with the intention of the parties. It is equally clear that under our decisions an express agreement on the subject of losses will control, and that, if such agreement provide for nonliability for losses, this fact alone will negative the existence of a partnership. As said in Veenstra v. Mathews, 194 Iowa 792, 190 N. W. 382, 383:

"It is strenuously argued by the defendant that there was no partnership because there was no agreement for a division of losses. It is true that there was no express agreement for such division. It is not essential that there should be, though it is essential to the existence of a partnership that there be a mutual liability for losses. In the absence of express agreement on the subject of losses, the mutual liability for losses will be implied where the fact of partnership is established by other evidence. Of course, if there be an express agreement on the subject of losses, such agreement will control. If such express agreement negative the sharing of losses, it negatives the partnership."

In our opinion the attitude of this court and of courts that hold a similar doctrine is not based upon any mere technical ground or adherence to precedents that were always questioned and are now generally rejected. The doctrine to which we adhere is founded upon principles of justice and fair dealing. Where a man has contributed his money to and taken the risk of losing it in an enterprise, with the distinct understanding and agreement that he shall not be liable for any greater amount than the money thus contributed, we are unable to see the justice or reasonableness of a doctrine which says that he must nevertheless be held liable to one who has dealt with such enterprise, with full knowledge of the terms of the agreement that the man who contributed his money to such enterprise shall not be liable for any of the debts thereof.

As is said in 12 C. J. p. 438:

"The doctrine of comity must yield to the positive law of the land. Hence, the foreign law must give way when in conflict with the statutes of the forum or the settled current of its judicial de-

cisions. \* \* \* Foreign laws will not be given effect when to do so would be contrary to the settled public policy of the forum."

Again, in 12 C. J. p. 440, it is said:

"It is obvious that no state will give effect to the laws of another on the principle of comity when the effect would be injurious to the state or its citizens, as, for example, where the recognition of the validity of a foreign sale of personalty without transfer of possession would be injurious to domestic creditors, or where the application of a foreign rule of market overt would have a similar effect. It belongs exclusively to each sovereignty to determine for itself whether it can enforce a foreign law without, at the same time, neglecting the duty that it owes to its own citizens or subjects."

In Dorr Cattle Company v. Des Moines National Bank, 127 Iowa 153, 98 N. W. 918, 102 N. W. 836, 837, 4 Ann. Cas. 519, plaintiff sought to recover damages for wrongful suing out and levy of a writ of attachment in the state of Illinois. Under the law of Illinois, the plaintiff was entitled to recover damages for injury to his credit, but under the Iowa holdings damages of this nature were not allowable because considered too remote. In refusing to apply the Illinois rule, this court said:

"In the instant case no right created by statute was asserted to have been violated. The rules of the common law alone were invoked. These obtain with equal force in Illinois, Iowa, and other states. They have been adopted, in so far as applicable, from the same common source, and must necessarily be assumed to be the same everywhere. Mistakes in interpretation may be made, but the principles of justice go on forever. Every court will determine for itself what these may be as found in the common law. Franklin v. Twogood, 25 Iowa 520, 96 Am. Dec. 73; National Bank v. Green, 33 Iowa 140; Johnson v. Ry., 91 Iowa 248, 59 N. W. 66; 6 Am. & Eng. Enc. (2d Ed.) 283. As said in Ruhe v. Buck, 124 Mo. 178, 27 S. W. 412, 25 L. R. A. 178, 46 Am. St. Rep. 439: 'The spirit of comity does not require that a nonresident shall be allowed a remedy which is, by the policy of the state law, denied to its own citizens.' According to the decisions of this court, damages resulting from injury to credit are too remote, uncertain, and speculative for allowance. The Supreme Court of Illinois has held otherwise, but, with all due respect for that eminent tribunal, we have felt con-

strained to adhere to our former conclusion, the effect of which is to denounce the ruling of that court, allowing such damages, as erroneous and contrary to the principles of justice as administered at the common law. Shall this court stultify its notions of justice by awarding a recovery contrary to what it conceives the principles of justice require, merely because the injury occurred across our borders instead of within this state? Because the injury occurred in Illinois, are the damages any less remote, uncertain, and speculative? The decisions of neither state purport to allow damages of this character, and what are such are for the court of this state to determine. Necessarily involved in the administration of the remedy are the elements to be considered in determining what it shall be. The effects of the wrong and injury are to be ascertained, but for the sole purpose of so advising the court as to enable it to apply the balm of adequate reparation. The nature and extent of the wrong, everything relating to its essence, is one thing; the consequences which naturally flow from it quite another. The right of recovery depends on the former; the remedy to be applied, and its extent, upon the latter; and the law of the forum necessarily determines what consequences shall be taken into consideration in fixing upon the remedy, for these inhere in that to be applied. It follows that, though the law may presume damages resulted from the injury, these in the instant case were so remote, uncertain, and speculative in character as not to permit of estimation, and nominal damages only should have been allowed."

See, also, Davis v. Bronson, 6 Iowa 410; Hamilton v. Chicago, B. & Q. R. Co., 145 Iowa 431, 124 N. W. 363; Hudson v. Von Hamm, 85 Cal. App. 323, 259 P. 374; Campen Bros. v. Stewart, 106 W. Va. 247, 145 S. E. 381; Continental Supply Co. v. Syndicate Trust Co., 52 N. D. 209, 202 N. W. 404; Studebaker Bros. Co. v. Mau, 14 Wyo. 68, 82 P. 2; Higgins v. Central New England, etc., R. Co., 155 Mass. 176, 29 N. E. 534, 31 Am. St. Rep. 544; Faulkner v. Hart, 82 N. Y. 413, 37 Am. Rep. 574.

While the petition in this case contained allegations that the defendants were held to the liability of partners or members of a joint adventure, appellant's assignments of error and argument have been directed to the effort to establish the defendants' liabilities as partners only. If, as we hold, the case must be determined by the law of Iowa, it is unnecessary that any attention should be given to the liability of the shareholders as members of a joint adventure be-

cause under our decisions the liability of such members of a joint adventure would be no greater than that of partners. In Bond v. O'Donnell et al., 205 Iowa 902, 218 N. W. 898, 902, 63 A. L. R. 901, we quoted with approval the statement that:

" 'A joint venture is a limited partnership, not limited in a statutory sense as to liability, but as to scope and duration; and under our law, joint adventures and partnerships are governed by the same rules.' "

In Goss v. Lanin, 170 Iowa 57, 152 N. W. 43, 45, we said:

"So far as this controversy is concerned, it is immaterial whether we treat the parties as co-adventurers or as co-partners. In either event, each would be the agent of the other. While it is true that, at common law, co-adventurers in an enterprise were recognized in courts only when the element of partnership was disclosed, and upon proof of the essentials of a partnership, this is not the law at the present time; and, although courts in modern times do not treat a joint venture as identical with a partnership, it is so similar in its nature and in the contractual relationships created by such adventure that the rights as between themselves are governed practically by the same rules that govern partnerships. As some of the courts hold that, while a partnership is ordinarily formed for the transaction of general business of a particular kind, a joint adventure, as a rule, relates to the single transaction, although it may comprehend a business to be continued for a period of years." (Citing cases.)

In our opinion the rule of comity does not require us to recognize the law of the state of Texas as controlling in this case. We are here considering a demurrer to the petition, and all facts well pleaded in the petition must be taken as true. If, however, the petition as a whole shows on its face that no cause of action is stated, the demurrer must be sustained. In this case, the plaintiff alleges liability of the defendants as partners or members of a joint adventure. Such liability is predicated upon a relation which it is claimed was created by the terms of the written articles of association and the declaration of trust. Copies of such articles of association and of such declaration of trust are attached to the petition and made a part thereof. Both such articles of association and declaration of trust explicitly state that the shareholding mem-

bers shall not be liable for any debt of the association. The articles of association contain a copy of the form of certificate to be issued to each shareholding member, and this form of certificate also contains a like provision as to the nonliability of the shareholding members. The petition contains no allegation that in any way attempts to establish a partnership or joint adventure liability because of the defendants' conduct or because of their holding themselves out as partners or members of a joint adventure. Inasmuch as the allegation of the existence of a partnership or joint adventure is predicated upon the articles of association and declaration of trust, and inasmuch as these articles of association and declaration of trust are not only insufficient to show the existence of a partnership or joint adventure, but expressly negative any liability on the part of shareholding members, we hold that the petition does not state a cause of action against the defendants.

The ruling of the trial court is affirmed.

ALBERT, C. J., and EVANS, KINDIG, CLAUSSEN, and MITCHELL, JJ., concur.